In re HOLLOWAY.

(District Court, D. Kentucky. April 6, 1899.)

No. 11.

BANKRUPTCY—FORECLOSURE OF MORTGAGE—SALE BY STATE COURT.
Where a mortgagee has obtained a judgment for foreclosure and sale in a state court before the institution of proceedings in bankruptcy against the mortgagor, and the court of bankruptcy is satisfied that the mortgaged property will not sell for enough to pay the mortgage debt, whether sold under authority of the state court or by the trustee in bankruptcy, and that the mortgagee has no intention to delay the sale unreasonably or

prevent the property bringing a fair price, proceedings in the state court will not be stayed, nor will the bankruptcy court take control of the property for the purpose of a sale by the trustee.

In Bankruptcy.

R. H. Cunningham, for petitioner.

Clay & Clay, for Farmers' Bank of Kentucky.

EVANS, District Judge.    Robert A. Holloway on his own petition was adjudged a bankrupt on the 6th day of September, 1898.    In 1897, in a suit brought in the Henderson circuit court, by the Farmers' Bank of Kentucky, a judgment was recovered against Holloway for over $10,000, and in that suit a judgment was also rendered for the sale of the mortgaged property described in the pleadings therein.    The master commissioner of the court was directed to execute the judgment; but, owing to the willingness of the bank to indulge its debtor, a sale of the mortgaged property was not in fact made.    That property embraced all of the real estate of Holloway.    Since the adjudication in bankruptcy, a controversy has arisen here resulting from the petition of the trustee in bankruptcy asking for a stay of proceedings in the state court, and praying that the bankrupt's estate, so far as it was mortgaged, and so far as it was directed to be sold under the judgment of the state court, shall also be administered in these proceedings. It is urged, however, on behalf of the bank, that the mortgaged property is clearly insufficient to pay the mortgage debt; that there cannot in any event be any surplus for the trustee in bankruptcy; that the state court proceedings had advanced to a judgment long before the bankruptcy of Holloway, and, indeed, long before the passage of the bankrupt law; and that it can only result in additional and unnecessary costs, practically to the extent of the trustee's fees, to require the mortgage property to be sold in these proceedings, instead of permitting it to be done under the judgment of the state court.    On the trial of the petition of the trustee in this case, it was frankly admitted by his counsel that there was no likelihood of there being any surplus for the general creditors; the mortgaged property being probably insufficient to pay the judgment of the state court.    It appears from other testimony, to the satisfaction of the court, that it is entirely certain that the mortgaged property will not sell for enough to pay the mortgage debt, and that it is not in fact worth the amount of the judgment.

The question presented is, shall the court, under circumstances of this character, stay the proceedings of the state court, and require a sale of the property to be made by the trustee in bankruptcy, and the proceeds to pass through his hands?    It seems to the court, from the provisions of the bankrupt law contained in sections 11 and 47, that after the adjudication the matter is entirely within the discretion of the court, to be determined as may appear best for the interest of the general creditors.    If it were probable that a larger sum would be realized from the sale by the trustee than from a sale by the master commissioner of the state court, and that the general creditors would be the beneficiaries of this increased price, it would be the duty of the court to see that the best results were obtained for the general credit-

ors. But, where it is apparent or extremely probable, that the mortgaged property will not be sufficient to pay the mortgage debt, it would be neither necessary nor judicious for this court to interfere with the state court proceedings. It seems that this was the well-established practice of the bankrupt courts under the act of 1867. Many adjudications might be referred to in which bankrupt courts were then guided by similar considerations. Should the property bring more than enough to satisfy the mortgage debt in this case, when sold under the judgment of the Henderson circuit court, it would be the duty of the trustee in bankruptcy to apply for the surplus. For the purpose of ascertaining what the surplus is, and for the purpose of being ready to obtain it, should it unexpectedly be realized, it might be well for the trustee to intervene in the state court proceedings, or at least keep in touch with them, so as to be ready promptly to look after the interest of the bankrupt's general creditors. Matters of this sort being in the discretion of the bankrupt court, should there be unreasonable delay in the state court proceedings, or should any unexpected complications arise, it might be the duty of the court on that account to stay other proceedings, and permit the trustee to take charge of the sale in lieu of the state court officers; but, as there does not appear to be any purpose upon the part of the judgment creditor in the state court to delay the sale of the property, nor to do anything to prevent its bringing a fair price, the motion of the trustee in this case will for the present be overruled, reserving power to take another course should the circumstances of the case require it.

The court is also of the opinion that the rights of other persons claiming liens on the same property can be better adjusted in the state court, as the questions arising upon these matters afford no reasonable expectation of any benefit to unsecured creditors. The interest of the latter is rather diminished than increased by the other lien claims.