### In re UTT et al.

### RIDGELY NAT. BANK v. MATHENY.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1901.)

#### No. 692.

1. BANKRUPTCY—PROCEEDINGS FOR REVISION—PARTIES.

In proceedings in the circuit court of appeals under Bankr. Act 1898, § 24b, for the review of an order made by a court of bankruptcy distributing a fund in the hands of the trustee of a bankrupt in payment of fees, costs, and expenses, in accordance with a petition of the trustee, where none of the distributees except such trustee were parties to the record below they need not be made parties to the petition for revision, but will be deemed sufficiently represented by the trustee.[1]

2. SAME—SALE OF MORTGAGED PROPERTY—RIGHTS OF MORTGAGEES.

A decree was entered in a state court foreclosing a first and second mortgage on real estate, and ordering its sale. Before the time fixed for the sale, creditors filed a petition against the mortgagors, on which

---

[1] Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.

they were adjudicated bankrupts. Such creditors also filed a bill in the circuit court of the United States on which they obtained an injunction restraining further proceedings for the sale of the mortgaged property by the state court. Thereafter the mortgagees joined in a petition to the court of bankruptcy asking that the property be sold by the trustee for payment of their liens, and such sale was ordered and made, the proceeds received being insufficient to pay the mortgage debts. On petition of the trustee the court ordered the first mortgage paid from the proceeds, but displaced the second in favor of the costs and expenses incurred in both the bankruptcy proceedings and the injunction suit, including fees allowed to counsel for the creditors and trustee. No other assets of the bankrupt came into the hands of the trustee. *Held*, that such order was erroneous, except in so far as it directed payment of the costs incurred in selling the property, including compensation to the trustee not exceeding that to which the master in the state court would have been entitled.

**3. SAME—COMMISSIONS OF REFEREES AND TRUSTEES—DIVIDENDS.**

Under Bankr. Act 1898, §§ 40, 48, providing that referees and trustees in bankruptcy shall be entitled to commissions on "dividends" paid by the estate, they are not entitled to commissions on sums paid to mortgagees from the proceeds of the mortgaged property on its sale by order of the court of bankruptcy, such sums not being dividends, within the meaning of the statute.

In Bankruptcy. Petition for revision of an order made by a court of bankruptcy.

This is a petition under subdivision "b" of section 24 of the bankrupt act of 1898 for a revision of proceedings in bankruptcy of the district court of the United States for the Southern district of Illinois. The material facts are these: Pamelia S. Clark, holding a first mortgage, and the Ridgely National Bank of Springfield, Ill., holding a second mortgage, executed by Edgar W. Utt, John P. Utt, and Frank Utt, partners under the name of Utt Bros., upon real estate, on March 21, 1899, obtained in the circuit court of Sangamon county, Ill., a decree of foreclosure, whereby there was determined to be due on the first mortgage $5,539.21, with $173 costs and solicitor's fee, and on the second mortgage $4,320.37, with $143 costs and solicitor's fee; and in pursuance of that decree the master in chancery of the court had duly advertised a sale of the property to occur on March 27, 1899. On March 17th the Black Diamond Coal Company and other creditors filed in the district court of the United States for the Southern district of Illinois a petition that the Utt Brothers be adjudged bankrupts, and on April 3d ensuing an adjudication to that effect was entered. Excepting the mortgaged property and the proceeds of the sale thereof, no assets of any character came into the trustee's possession. On March 22d, before the advertised day of sale and before the adjudication in bankruptcy, the Black Diamond Coal Company brought a bill in the United States circuit court for the Southern district of Illinois praying an injunction forbidding a sale of the mortgaged property by the master in chancery under the decree of the state court. On March 25th a restraining order was issued, and the defendants were ruled to show cause on April 5th why an injunction should not issue, and in June following the writ was ordered as prayed, and no appeal from the order was taken; but on November 4, 1899, the holders of the two mortgages joined in a petition to the district court that the trustee in bankruptcy be directed to advertise and sell the mortgaged property, and to pay to them out of the proceeds of the sale the amounts found due by the Sangamon circuit court. On November 27th the court made an order to that effect, including in the costs of this proceeding, directed to be first paid, the sum of $200 allowed to the solicitors of the petitioners. This allowance the solicitors for the Ridgely National Bank disclaimed in open court before the sale was made, and reserved to themselves and the bank the right to except to any allowance for any fees or charges in the bankruptcy proceedings. A sale made on December 26th was set aside because the bid was

less than three-fourths of the appraised value of the property, and on January 18, 1900, a resale was made to the Ridgely National Bank for the sum of $7,600, there being due on the first lien more than $6,000, and upon the lien of the bank near $5,000. The sale was reported to and approved by the court on February 3, 1900, and on the same day the trustee presented to the court a petition asking that the sum bid for the property "when received" be distributed as follows: "First. That said sum first be applied to the payment of principal and interest due on the mortgage held by Pamelia S. Clark and all the costs of this bankruptcy proceeding, which said costs shall include the clerk's, referee's, marshal's, trustee's, and appraisers' costs and commissions as provided by law, and all other costs incident to and growing out of such bankruptcy proceedings, and the sale of said real estate, including advertisements and other expenses incurred by the trustee in carrying out the decretal order of sale entered herein, and that said costs shall also include the sum of five hundred dollars for W. St. John Wines, the solicitor for the petitioning creditors, and also the sum of one hundred dollars for Robert Matheny, the solicitor for the trustee, which said sums of five hundred dollars and one hundred dollars, respectively, the court may find to be a reasonable compensation for their services; said payments to be made according to the schedule following, to wit. * * * Second. That after the payment of the said amount due the said Pamelia S. Clark and the costs and expenses as set out in the foregoing schedule the undersigned may be directed to apply the balance in his hands to the discharge of the principal and interest due on the mortgage held by the Ridgely National Bank set out in the decretal order heretofore entered herein, which said principal and interest at this date amounts to the sum of four thousand five hundred and seven and $^{57}/_{100}$ dollars, and if, after the application of said balance, there should still remain in the hands of the said trustee any portion of the money realized from such sale, that the undersigned may be directed to bring the same into court for further order and direction." Of the items embraced in the schedule referred to, the Ridgley National Bank objected that the following were not properly chargeable against the fund in preference to the lien of the bank:

| | |
|---|---:|
| Lee Matheny, trustee's commissions | $202 00 |
| Robert Matheny, attorney for trustee | 100 00 |
| M. B. Converse, clerk, for use of W. St. John Wines fees advanced | 25 00 |
| C. P. Hitch, U. S. marshal, marshal's fees advanced for use of St. John Wines | 2 00 |
| Appraisers' fees and expenses | 32 00 |
| W. E. Shutt, referee's expenses | 18 25 |
| Attorney's fees W. St. John Wines | 500 00 |
| W. E. Shutt, referee's commission on sale | 76 00 |
| S. D. Scholes, attorney's fees in Clark mortgage in district court | 100 00 |
| W. St. John Wines, expenses advanced in injunction suit | 11 55 |
| C. P. Hitch, marshal, for the use of St. John Wines | 6 00 |
| J. T. Jones, clerk's costs in injunction proceedings | 7 30 |
| J. T. Jones, clerk, use W. St. John Wines | 5 00 |

The court, on April 27, 1900, overruled the objection, and ordered "that the said trustee proceed to distribute said proceeds in the manner indicated in his said petition." These facts in greater detail, with full copies of the documents, orders, and decrees referred to, are set forth in the petition presented by the Ridgely National Bank to this court on May 15, 1900. The record shows a notice dated May 14, 1900, and addressed "To Lee Matheny, trustee, Robert Matheny, attorney, W. St. John Wines, William E. Shutt, S. D. Scholes," etc., to the effect that on May 15th, or as soon thereafter as the court would hear the same, application would be made to this court for leave to file a petition for the review of the order dated April 27th. Service of that notice on the day of its date was acknowledged by each of the persons to whom it was addressed. Upon presentation of the petition the order of this court was that it be filed and that "Lee Matheny, trustee, answer thereto within twenty days from service of a copy of this order." He filed an answer on June 5th, 1900, reiterating in substance the facts already stated.

C. L. Conkling, for petitioner.
Samuel P. Wheeler, for respondent.

Before WOODS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

It is insisted that the petition should be dismissed for the lack of necessary parties, who, it is said, are directly interested and not represented by the trustee, who is the sole respondent. It is a sufficient answer that none of those referred to were parties to the proceedings below, none of them had intervened for the purpose of asserting a claim upon the fund, and except in the petition of the trustee their names appear nowhere in the record. Represented as they were solely by the trustee below, they must be deemed to be sufficiently represented by him here. Besides, as already stated, those of them chiefly concerned joined the trustee in accepting service of notice of the proposed application to this court, and also in acknowledging receipt of a copy of the petition which it was proposed to file, and it has been, therefore, a matter of their own choice that they have not appeared here in their own behalf,—an illustration, perhaps, of the scripture that "a prudent man foreseeth evil and hideth himself." Only the foolish needlessly expose themselves to a judgment for costs when there is a possibility of hiding behind a trustee, who, by reason of presumed innocence of wrongful intention, will not be held personally responsible, notwithstanding the only visible purpose of the proceedings has been to create claims for costs and commissions which could be paid only by the displacement of vested rights.

Concerning the merits: The mortgaged property having been sold by the trustee in bankruptcy under the order of the district court, it is equitable and right that the expenses of the sale, including advertisement, appraisement, if appraisement was required by law, revenue stamps, and compensation to the trustee, not exceeding that of the master in chancery if the sale had been made by him under the decree of the state court, should be paid out of the proceeds of the sale; but, in so far as it was directed that attorneys, the clerk, and the marshal should be paid for services in the bankruptcy proceedings not directly connected with the sale, or in the suit for an injunction, the order made was without justification in law or equity. This includes the $100 directed to be paid to the attorney for the trustee, for whose assistance, in connection with the sale, there could have been no necessity. What facts were alleged in the bill upon which further proceedings in the foreclosure suit in the state court were enjoined the record before us does not show, and whether, at the stage the suit had reached, there could have been a showing such as to justify the injunction, we do not consider. See, on the subject, In re Pittelkow (D. C.) 92 Fed. 901; In re Holloway (D. C.) 93 Fed. 638; In re Horton (C. C. A.) 102 Fed. 986. Without a clear showing of a substantial value in excess of the mortgage liens the applica-

tion for the injunction ought not to have been entertained, and it is difficult now to understand how such a showing could have been possible. It was, however, a matter within the jurisdiction of the court, and, the writ having issued, it was at least the privilege of the mortgagees, instead of appealing from the order, to apply for relief to the bankrupt court. Indeed, no other way of obtaining a prompt sale was open. The order of sale made, in its original form, provided for the application of the proceeds, after payment of the costs of the sale, to the discharge of the mortgage liens; but that provision was afterwards stricken out, and the question, held meanwhile under advisement, was finally determined by the order which we are asked to review.

If the commissions allowed to the trustee and the referee are warranted by the law, the allowances to attorneys and others are probably equally justifiable. By sections 40 and 48 of the bankrupt act the trustee and referee are to receive for their services a commission "on sums to be paid on dividends and commissions." The point in dispute is: What is the meaning of "dividends," as the word is used in these provisions? The question has been considered in a number of cases by the district courts. In re Wayne Electric Corp. (D. C.) 94 Fed. 109; In re Fielding (D. C.) 96 Fed. 800; In re Barber (D. C.) 97 Fed. 547; In re Sabine, 1 Am. Bankr. R. 321. We agree with the conclusion declared in the first two of these cases that sums to be paid upon secured claims or other claims entitled to priority of payment are not "dividends" upon which the trustee or referee may receive a commission. This is made clear by other provisions of the statute. By sections 56b and 57e creditors holding claims which are secured or have priority can vote at creditors' meetings, or their claims be counted in computing either the number of creditors or the amount of their claims, only when the claims exceed the value of the securities or priorities, and then only for the excess. They are treated as creditors only for the unsecured excess. Section 65a declares that "dividends of an equal percentum shall be declared and paid on all allowed claims, except such as have priority or are secured." This, if not strictly speaking a definition of the word "dividends," is equivalent to a declaration that in this respect claims having priority and secured claims are upon the same footing. The opinion in the Barber Case, supra, recognizes this construction, but makes a distinction against secured creditors who invoke the action of the bankrupt court, and through the action of that court alone have their security converted into a fund in the hands of the trustee. "If a secured creditor," it is said, "refrains from asking or invoking the aid of the court of bankruptcy to enable him, through its officers, and its exercise of jurisdiction, to turn his securities into cash, then, although the court, for the benefit of the unsecured creditors, should use its equitable power to the extent of selling the incumbered property free and discharged of the incumbrance, assuming to care for the equitable rights of the secured creditor in its disposition of the moneys arising from the sale, there would seem to be reason for holding that the moneys going to the secured creditor under such circumstances only came into the case inci-

dentally as the result of the effort to realize and obtain other money for the unsecured creditors, and that it should not be regarded as any dividend, or charged with any commissions. * * * But there is nothing in the law which excludes the referee from commissions upon the dividends to any class of creditors from a fund obtained through the action of the court alone, and the services of its officers, when such action and services have been invoked by such creditors." We find no warrant for this distinction in the terms of the statute. It rests on considerations of reasonableness and justice, which, if brought to the attention of congress, might perhaps have led to its express adoption; but if the statute, as it stands, does not exclude commissions to the referee or trustee upon a fund obtained through the action of the court when invoked by the secured creditor or by a creditor entitled to priority, then it does not exclude such commissions upon the fund when obtained by the action of the court upon the petition of the trustee, and when the creditor not only has not asked, but has objected to, the interference of the bankrupt court. If, however, the distinction were conceded in the terms stated, it would not apply in letter or spirit to the present case. These mortgagees had already obtained, and were proceeding to sell under the decree of the state court, and not until they had been enjoined against further steps in that direction did they apply to the district court. That court was not asked and did not assume to act independently and alone. In respect to the validity, amount, and priority of the mortgage liens one over the other and of both over the demands of other creditors, it recognized the conclusiveness of the foreclosure decree, and the sale ordered to be made was, in effect, a substitute for that about to have been made by the master in chancery. The effect may have been to cut off a right of redemption which would have existed if the sale had been made under the decree of foreclosure, but it does not appear that that right was of any value which could have been made available to the bankrupt estate, or that the sale was for a greater price than would have been offered at a foreclosure sale. On the contrary, it is evident that the entire value of the property was much less than the sum due upon the mortgages. To bring the case within the distinction declared in the Barber opinion, if conceded to be sound, it should be shown that the property had a rental value during the period of redemption of which the purchaser got the benefit under the sale made by the trustee, and which he could not have obtained by a purchase under the decree of foreclosure. It follows that the order under review should be set aside, and, that done, the court will proceed in accordance with this opinion. It not appearing that the trustee was responsible for what was done, and the petitioning creditors and their counsel, who presumably were responsible, not being parties to this proceeding, neither party will be allowed costs in this court. So ordered.