## In re MAMMOTH PINE LUMBER CO.

(District Court, W. D. Arkansas, Texarkana Division. June 24, 1902.)

1. BANKRUPTCY—ALLOWANCE OF FEES BY REFEREE—REVIEW.

Allowance of fees by the referee in bankruptcy to himself and the trustee is reviewable, though under his order payment has been made to the trustee; his account never having been presented to or passed on by the court, as required by Gen. Orders in Bankr. 26, 35, and the funds having been drawn without the warrant being countersigned by the judge, or one designated by him to do so, in contravention of order 27.

2. SAME—COMMISSIONS—DIVIDENDS.

"Sums to be paid as dividends," on which referees and trustees are allowed commissions by Bankr. Act 1898, §§ 40a, 48a, are what remain after payment of taxes and priority claims in full, as provided by sections 64a, 64b; section 65a providing that dividends shall be paid on all allowed claims, except such as have priority or are secured.

3. SAME—COMPENSATION FOR NOTICES.

Under Gen. Order in Bankr. 35, par. 2, providing for compensation to the referee for expenses necessarily incurred in giving notices, he cannot, in case of re-examination of a claim, be allowed for notices to creditors other than one provided for by order 21, par. 6, to the creditor whose claim is to be re-examined, or for notices on distribution of money to preferred creditors; Bankr. Act 1898, § 58, providing only for notice of payment of dividends, or for notice of protest against confirmation of sale, and none being required by the act or general orders.

4. SAME—FOR INVESTIGATIONS AS TO SPECIFIC LIENS.

In the absence of any provision therefor in Bankr. Act 1898 or the general orders, compensation cannot be allowed a referee for investigation and finding in the usual and ordinary way in cases of specific liens.

5. SAME—ALLOWANCE FOR STENOGRAPHERS.

Except where the stenographer is employed on application of the trustee, as provided by Bankr. Act 1898, § 38a, cl. 5, or there has been a stipulation of the parties, or money has been deposited for the expense as provided by general order 10, the referee cannot be allowed for expense of stenographer.

6. SAME—ALLOWANCE TO TRUSTEE—EQUITY POWERS.

The court under its equity power will allow the trustee a commission for selling, not exceeding what would have been allowed a master commissioner,—J., mortgagee of the timber land constituting the main value of the lumber plant of bankrupt, having filed a bill to foreclose; it having, on consultation between the trustee and J.'s attorney, with assent of the referee, been concluded that if the mortgage was foreclosed, and the land sold under the decree apart from the mill properties, and bought by J., the mill properties would be of no value to any one else, whereas, if all could be sold at one time, free of incumbrance, the whole would bring more than if sold separately, and suggestion having been made and carried out, without objection, that J.'s attorney prove up his claim in bankruptcy, dismiss the foreclosure suit, and petition the referee for sale of the property free from incumbrance, and appropriation of enough of the proceeds of the sale of the land for payment of the mortgage debt, and sale having been made accordingly by the trustee on order of the referee.

L. A. Byrne, for petitioning creditors.

ROGERS, District Judge. This is a petition by the South Texas National Bank to review the action of the referee in making allow-

¶ 1. Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.

ances of fees to himself and to the trustee in bankruptcy. The administration of the estate has reached the point where practically all the funds of the bankrupt's estate, except an amount set apart to cover the litigation now pending on appeal in the supreme court of Arkansas, have been disbursed. The assets of the Mammoth Pine Lumber Company consisted of a large body of timber land, sawmills and machinery, and lumber, an interest in a railroad, etc.; in short, it was a lumber plant. The lands were mortgaged for nearly $45,-000. A large part of the balance of the plant was covered by vendors', laborers', and other liens. The mortgage liens and these special statutory liens and priority claims, taking precedence over unsecured creditors, amounted in the aggregate to a sum far in excess of all the assets of the estate. $49,485.49 were paid in full satisfaction to said classes of claimants other than priority claimants, and $10,-000 additional were paid on the priority claim of the South Texas National Bank, leaving still due to that bank a sum far in excess of the remaining assets. The referee in bankruptcy has allowed himself for services and incidental expenses, such as mailing notices, stenographer's fee, hearing and passing upon claims, and the like, $1,291.51, his account never having been presented to or passed upon by the court, as required by general orders 26 (32 C. C. A. xxvii, 89 Fed. xi) and 35 (32 C. C. A. xxxiv, 89 Fed. xiii) adopted by the supreme court of the United States; and he has allowed to the trustee in bankruptcy as commissions $743, besides an account of $43.70 for incidental expenses in the administration of the estate, the items of which are not called in question by the petition for review.

Manifestly this case calls for a review of the action of the referee in the administration of the estate. The referee's account shows that he has disbursed in all $60,151.84, and on this he has allowed himself a commission of 1 per cent., and he has allowed the trustee in bankruptcy on the same 3 per cent. on the first $5,000, 2 per cent. on the second $5,000, and 1 per cent. on the remainder. This $60,000, upon which these commissions are allowed, was made up of the following items:

Paid to Jones estate on mortgage upon lands..................... $44,916 00
Paid to South Texas National Bank on priority claims............ 10,000 00
Paid on other priority claims, fees, and commissions............ 5.235 84

Total ..................................................... $60,151 84

The question naturally arises whether or not any commissions can be allowed the referee on these sums. In the first place, it is suggested that, as these moneys have been allowed and disbursed, the payment thereof is waived by the creditors who now seek a review, and that, so far as the trustee is concerned, the funds having been paid out under the order of the referee might in some cases result in the bankruptcy of the trustee. The position is not tenable for many reasons,—primarily not tenable because rule 29 (32 C. C. A. xxviii, 89 Fed. xii) provides that:

"No moneys deposited as required by the act shall be drawn from the depository unless by check or warrant, signed by the clerk of the court or by the trustee, and countersigned by the judge of the court, or by a referee desig-

nated for that purpose, or by the clerk or his assistant under an order made by the judge, stating the date, the sum, and the amount for which it was drawn."

The judge has never countersigned any warrant for these funds, nor has he designated any referee to discharge that duty. The moneys were, therefore, drawn from the depository without authority of law.

In the second place, general order 26 (32 C. C. A. xxvii, 89 Fed. xi) provides:

"Every referee shall keep an accurate account of his traveling and incidental expenses, and of those of any clerk or other officer attending him in the performance of his duties, in any case which may be referred to him, and shall make return of the same under oath to the judge, with proper vouchers when vouchers can be procured, on the first Tuesday in each month."

No such step has been taken in this case by the referee.

In the next place, the bankrupt law provides what the fees of the referee and trustee shall be, and general order 35 (32 C. C. A. xxxiv, 89 Fed. xiii), adopted and promulgated by the supreme court of the United States (that court, doubtless, recognizing the hardship on the clerk, referee, and trustee in bankruptcy under the existing law), provides for the payment to said officers for such services and expenses as they are called upon to perform not in pursuance of the duties prescribed by the act, and expressly states that the compensation of these officers, prescribed by the act, shall be in full compensation for all services performed by them under the act and under these general orders. The court is of opinion, therefore, that this question is open for review, and that all questions of this character should remain open until the final settlement of the estate, where the same have not already been passed upon by the district judge or court.

Now, to recur to the question as to whether or not commissions may be allowed to the referee and trustee on the $60,151.84 disbursed on mortgage and other priority claims: In Re J. W. Harrison Mercantile Co., 2 Am. Bankr. R. 420, 95 Fed. 123, Philips, District Judge, said:

"The history leading up to the adoption of the present bankrupt law shows that the great abuses under the preceding national bankrupt act, in the way of exorbitant fees which largely consumed the assets of the bankrupt, whereby the ministerial officers grew rich upon the administration of the act, while the creditors starved, impelled congress, in the adoption of the present bankrupt act, to reverse this practice, so that the bankrupt law should be so administered that the creditors should be the favorites of the court, rather than the agents assisting the court in the preservation and disposition of bankrupt estates. The obvious policy of the present act, manifest throughout all its provisions, respecting fees and commissions, is to reduce to the lowest minimum the expenses of administration. This is especially made manifest in the meager fees allowed the clerks, referees, and trustees. Indeed, so inadequate is the compensation allowed to these officers that it is a matter of happy surprise to the courts that they have been able to secure the services of such competent persons to fill the places of referees and trustees; and because of the meager compensation allowed by the act to these officers courts are exposed to the constant temptation to either read into the act some provision not found in its letter, or by the most liberal construction of doubtful or ambiguous terms to augment fees and commissions. This is a tendency, however, in my judgment, which it is the bounden duty of the court to resist.

It is the duty of the court, from which it cannot honestly escape, in applying this statute, to give it such construction and such application as will carry out and effectuate the legislative will. Any other action by the court is but an attempt to set up and substitute the notions and inclinations of the individual judge as to what would be a reasonable compensation for services under this law for that of the legislature, whereas, as already suggested, the court can have no policy in conflict with that of the legislative scheme."

The views entertained by me upon this subject could scarcely be expressed in more apt language than contained in the above opinion. The same learned jurist, in the case of In re Fielding, 3 Am. Bankr. R. 135, 96 Fed. 800, in passing upon the precise question now under consideration, said:

"The question now presented for determination is, on what sum of the estate is the per centum of commission of the referee and trustee to be calculated? Is it on the whole fund coming into the hands of the trustee, or is it to be limited to the residue after deducting the expenses of administration and the preferred claims? These questions must be answered by the statute as the sole book of reference. Section 40a of the bankrupt act declares: 'Referees shall receive as full compensation for their services, payable after they are rendered, a fee of ten dollars deposited with the clerk at the time the petition is filed in each case, except when a fee is not required from a voluntary bankrupt, and from estates which have been administered before them one per centum commissions on sums to be paid as dividends and commissions, or one-half of one per centum on the amount to be paid to creditors upon the confirmation of a composition.' Section 48a declares that 'trustees shall receive, as full compensation for their services, payable after they are rendered, a fee of five dollars deposited with the clerk at the time the petition is filed in each case, except when a fee is not required from a voluntary bankrupt, and from estates which they have administered such commissions on sums to be paid as dividends and commissions as may be allowed by the courts, not to exceed three per centum on the first five thousand dollars or less, two per centum on the second five thousand dollars or part thereof, and one per centum on such sums in excess of ten thousand dollars.' Section 64a directs that the amount of all taxes legally due and owing by the bankrupt shall be paid by the trustee on the order of court. Subsection 'b' declares what claims and expenses shall have priority, 'to be paid in full out of bankrupt estate,' and the order of their payment. The taxes are to be paid in full, and the priority claims are also to be paid in full, in the order named in the statute. Until these are paid there is no fund to be divided among the general creditors. In other words, the term 'dividends' can have no application to the priority claims, for the reason that the statute directs them to be paid out of the estate in full, seriatim, before the matter of declaring and paying dividends arises. This is made clear by the succeeding section (65a), which declares that 'dividends of an equal per centum shall be declared and paid on all allowed claims, except such as have priority or are secured.' It may be conceded that said section 65a, strictly speaking, does not undertake to define what a dividend is, but it unmistakably indicates what, in the legislative mind, was meant by the term 'dividends.' It is an expressed declaration that in this respect claims having priority are identical with secured claims, neither of which is subject to a declaration and payment of the equal per centum. In Re Ft. Wayne Electric Corp. (D. C.) 94 Fed. 109, it is held that the referee is not entitled to commissions on claims of secured creditors, as they are not dividends within the meaning of the statute. The same statute which declares that no dividend shall be declared and paid on secured claims makes a like declaration in respect of claims entitled to priority. As the commissions to be paid to the referee and trustee are a per centum 'on sums to be paid as dividends,' etc., it would seem logically to follow that, where no dividends are to be declared and paid, no commissions for the referee and trustee can be predicated. Both in common and legal parlance the term 'dividends' implies a portion of a fund divided among several owners. Bouvier defines it primarily as 'a portion of the principal or profit di-

vided among several owners of a thing.' Black, in his Law Dictionary, defines it primarily as 'a fund to be divided. * * * In bankruptcy or insolvency practice, a dividend is a proportional payment to the creditors out of the insolvent estate.' In either case the definition carries with it the idea of the division of a fund owned by several parties, and the dividend is the aliquot portion of the estate of the common owners. In the claims entitled to priority there can be no common or proportionate ownership to be ascertained as the subject of dividend, as such claims are to be paid in full, as an entirety, in the order named in the statute. No notice of claims entitled to priority is required to be given to the creditors, as they are to be paid in full directly; and the general creditors, therefore, have no participation or interest in this fund, as it is not the subject of dividend. No commission or per centum can be deducted from the priority claims, for the reason that they are to be paid in full. Therefore, if commissions should be allowed on the aggregate amount of the estate coming into the hands of the trustee, the whole burden of such commissions would fall upon the general creditors, part of which commissions would be based upon a fund which never became the subject of dividends, thereby still further diminishing the distributive shares of the general creditors. Under the act of 1800 (section 47), compensation for ministerial officers was allowed by the court, and the amount thereof was discretionary with the court. The act of 1841 (section 6) authorized the courts to prescribe a tariff of fees and charges, without fixing the compensation in any other way. The act of 1867 (section 28) allowed the assignee a graduated per centum on the moneys 'received and paid out.' In other words, his commission was predicated upon all moneys received and paid out by him, no matter whether as preferred or general funds. And by section 47 of that act the register was allowed fees dependent upon his work and time. Such fees were paid him by the clerk out of a deposit of $50, made when the petition was filed. By the amendatory act of 1874 these fees were cut in two. The provisions of the act of 1898, giving to the referee and trustee a per centum on 'dividends,' are therefore quite significant. The statute in other respects, as in section 56b, indicates that congress distinguished between claims secured and entitled to priority and general creditors. It declares that 'creditors holding claims which are secured or have priority shall not, in respect to such claims, be entitled to vote at creditors' meetings, nor shall such claims be counted in computing either the number of creditors or the amount of their claims, unless the amounts of such claims exceed the value of such securities or priorities, and then only for such excess.''

It seems to me that the reasoning in this opinion is unassailable, and this case has been approved by the circuit court of appeals for the Seventh circuit in the case of In re Utt, 5 Am. Bankr. R. 387, 105 Fed. 754. Mr. Justice Woods, in delivering the opinion in that case, said:

"If the commissions allowed to the trustee and the referee are warranted by the law, the allowances to attorneys and others are probably equally justifiable. By sections 40 and 48 of the bankrupt act the trustee and referee are to receive for their services a commission 'on sums to be paid on dividends and commissions.' The point in dispute is: What is the meaning of 'dividends,' as the word is used in these provisions? The question has been considered in a number of cases by the district courts. In re Ft. Wayne Electric Corp. (D. C.) 3 Am. Bankr. R. 186, 94 Fed. 109; In re Fielding (D. C.) 3 Am. Bankr. R. 135, 96 Fed. 800; In re Barber (D. C.) 3 Am. Bankr. R. 306, 97 Fed. 547; In re Sabine, 1 Am. Bankr. R. 321. We agree with the conclusion declared in the first two of these cases that sums to be paid upon secured claims or other claims entitled to priority of payment are not 'dividends' upon which the trustee or referee may receive a commission. This is made clear by other provisions of the statute. By sections 56b and 57e, creditors holding claims which are secured or have priority can vote at creditors' meetings, or their claims be counted in computing either the number of creditors or the amount of their claims, only when the claims exceed the value of the securities or priorities, and then only for the excess. They are

treated as creditors only for the unsecured excess. Section 65a declares that 'dividends of an equal per centum shall be declared and paid on all allowed claims except such as have priority or are secured.' This, if not strictly speaking a definition of the word 'dividends,' is equivalent to a declaration that in this respect claims having priority and secured claims are upon the same footing."

He then proceeds to disapprove the decision of In re Barber, supra. The same doctrine has been adhered to in Re Epstein, 6 Am. Bankr. R. 191, 109 Fed. 878. Some authorities may be found by some of the referees and district courts relaxing this rule; but, in the opinion of the court, the relaxation is without warrant and in plain violation of the letter and spirit of the bankrupt law and general orders of the supreme court of the United States. The commissions allowed the referee and the trustee on the $60,151.84 disbursed to mortgage and other priority creditors must be disallowed in toto.

The next item to which objection is made in the petition for review is an item of $30 for notices of creditors' meetings and the sum of $150 for passing on specific claims, which he denominates as "specific liens." It appears from the schedule of the creditors that there are 102 creditors. Under the practice obtaining in this court and by virtue of paragraph 2 of general order 35 (32 C. C. A. xxxiv, 89 Fed. xiii), the referee in bankruptcy should be allowed 10 cents for every notice sent out, as covering the expense necessarily incurred in publishing or mailing notices, including the services (if one is used) of a clerk; and it should be remarked in this connection that the sum of 10 cents per notice will be allowed, whether the clerk is used or not used, under that paragraph of the rule above referred to. The referee in bankruptcy has furnished the court with a list of cases in which notices have been sent out. The cases are as follows:

"Referee mailed the following notices to creditors: (1) First meeting of creditors to elect trustee; (2) first sale of property on September 12, 1901; (3) second sale of property on October 28, 1901; (4) on protest to confirmation of the first sale; (5) on distribution of money; (6) on claim of John Shatt mortgage; (7) on claim of S. S. Smith for wages; (8) on claim of M. Williamson for right of way; (9) on claim of Jones & Hudgins, attorney's fees, for $300; (10) on claim of L. A. Byrne, attorney's fees, for $2,500; (11) on claim of Three Links Lumber Company for money advanced; (12) on claim of Merchants' Bank of Ft. Smith; (13) on claim of Wm. Echols Dry Goods Company; (14) on claim of W. J. Echols, with preference; (15) on claim of National Bank of Commerce, Kansas City, Mo.; (16) on claim of D. T. Morton (bill of sale disallowed); (17) on claim of M. T. Jones mortgage; (18) on claim of W. T. Edmondson, lien on shingles; (19) on claim of L. L. Morrow, engineer lien on railroad; (20) on ten timber claims, liens on right of way of railroad; (21) on two accounts of T. E. Webber for attorney's fees; (22) on claim of Arkansas Construction Company for right of way."

The first three items contained in this list are cases in which notices are required by the bankrupt law to be sent out. Section 58 of the bankrupt law reads as follows:

"Sec. 58(a). Creditors shall have at least ten days' notice by mail, to their respective addresses as they appear in the list of creditors of the bankrupt, or as afterwards filed with the papers in the case by the creditors, unless they waive notice in writing, of (1) all examinations of the bankrupt; (2) all hearings upon applications for the confirmation of compositions or the discharge of bankrupts; (3) all meetings of creditors; (4) all proposed sales of property; (5) the declaration and time of payment of dividends; (6) the filing

of the final accounts of the trustee, and the time when and the place where they will be examined and passed upon; (7) the proposed compromise of any controversy; and (8) the proposed dismissal of the proceedings.

"(b) Notice to creditors of the first meeting shall be published at least once and may be published such number of additional times as the court may direct. The last publication shall be at least one week prior to the date fixed for the meeting. Other notices may be published as the court shall direct.

"(c) All notices shall be given by the referee, unless otherwise ordered by the judge."

Should any allowance be made for notices sent to the other creditors for items embraced in this account? It does not appear that any notices as to those items are required by section 58, and the only other reference to notices in the bankrupt law that I have been able to find will be found in section 39a, cl. 4. If the referee sent out notices to all the creditors under any of the items in the above account except the first three, I have been unable to find any authority for doing so, and I am of the opinion that he was under a total misapprehension of his duty in that regard. If he did send out such notices, I have found no authority anywhere, either in the bankrupt law or in the orders of the supreme court, authorizing any such proceeding. I am unable to ascertain from the records in this case in what way the controversies on these claims have been brought about. The court has, whenever occasion has presented itself, since the enactment of the bankrupt law, sought on all proper occasions to impress upon the referees and lawyers the necessity of observing the bankrupt law, the general orders of the supreme court, and the rules of practice in this court; and it may be appropriate at this point to suggest that it is no part of the duty of a referee in bankruptcy, when a claim duly probated is presented for allowance, to do more than to examine to see whether anything appears upon the face of the paper which shows that the claim ought not to be allowed. If any such thing appears, it should be disallowed; if it does not, the claim should be allowed; and for this service by the referee the bankrupt law makes no provision for payment. Presumably it is paid by the general allowance made to the referee by the bankrupt law. If, after the claim is allowed, the trustee or any creditor shall desire the re-examination thereof, the sixth paragraph of rule 21 (32 C. C. A. xxiii, 89 Fed. x) makes provision therefor as follows:

"When the trustee or any creditor shall desire the re-examination of any claim filed against the bankrupt estate, he may apply by petition to the referee to whom the case is referred for an order for such re-examination, and thereupon the referee shall make an order fixing a time for hearing the petition, of which due notice shall be given by mail addressed to the creditor. At the time appointed the referee shall take the examination of the creditor, and of any witnesses that may be called by either party; and, if it shall appear from such examination that the claim ought to be expunged or diminished, the referee may order accordingly."

I assume, from what I can gather from the record in this case, that no application was ever made by the trustee or any creditor for the re-examination of any of these claims, and that the trustee, through his attorney, would simply file answers or exceptions to the claim, and thereupon a time would be set for the trial of the causes. I am not disposed to be technical in the construction of

116 F.—47

this rule, and I am inclined to treat these exceptions as petitions for the re-examination of the claims. It would be better, however, that the order above quoted should be hereafter followed; but at all events, if the petition had been filed under paragraph 6 of order 21 (32 C. C. A. xxiii, 89 Fed. x) by the trustee for the re-examination of the list of claims presented to the referee, no notice was required, except to the claimant. He was not required to give notice to all the creditors that a re-examination had been called, and a practice of that kind is utterly unwarranted by anything to be found in the bankrupt law or orders or rules of court. I conclude, therefore, on the showing made and on the examination of the record, that the utmost to which the referee would be entitled for notices would be 10 cents per notice to 102 creditors for meetings relating to the first three items of the account, and one notice to 26 creditors whose cases were under contest, making in all 332 notices, which, at 10 cents each, would be $33.20; and the exceptions to the referee's account as to notices are sustained, except as to $33.20.

No allowance should be made to him for notices in reference to items 4 and 5, for the reason that no distribution of money requiring a notice has ever been had, and because no notice was required as to the protests against the confirmation of the first sale.

The next exception is to the item which the referee allowed himself for the investigation and finding in 15 cases of specific liens,—$150. The referee in this case has been called upon to pass upon a number of questions relating to specific liens, and in a case so complicated and difficult as this one has been a sense of fairness and justice would seem to suggest that he ought to be paid something therefor; but, unfortunately for the referee, the court is bound by the statute. It has been held in one case that, where an application for discharge is referred to the referee for his examination and report, it should be treated as a reference to a master in chancery, and he should be allowed for the service performed. Fellows v. Freudenthal, 4 Am. Bankr. R. 490, 102 Fed. 731. Exactly the reverse was held in Re Troth, 4 Am. Bankr. R. 780, 104 Fed. 291. But none of these matters were referred to the referee as a master in chancery. They were matters which came up in the administration of the estate in the usual and ordinary way, and were not brought to the attention of the court at all. I am unable to find any authority in law whereby the court can allow anything to the referee for passing upon this class of claims, and the item of $150 for investigation and finding in 15 specific claims is disallowed. In Re Todd, 6 Am. Bankr. R. 88, 109 Fed. 265, Judge Brown, of the Southern district of New York, did allow to a referee the sum of $50 for his services in hearing a claim; but it was under very peculiar circumstances. A controversy arose between the trustee and a third person in regard to the possession and ownership of the contents of a safe deposit box, whereupon the trustee filed a petition with the referee, and thereupon the latter made an order that the claimant appear before him to be heard with reference to the right of property and the possession of the contents of the box. The claimant attended by himself and counsel, and the matter was heard, and it

was for this service that Judge Brown made the allowance; but it will be seen by an examination of the case that he based his opinion in that case upon the analogies in the federal practice, citing cases arising before the passage of the present bankrupt law. That case, like this one, presents a great hardship; but it is not for the courts to make law, nor is it for the courts to construe the statutes away by analogies in the practice of the court or under other statutes. The compensation of the referee, as above stated, is fixed by the terms of the statute and by general order 35 (32 C. C. A. xxxiv, 89 Fed. xiii); and it is not for this court, or any other court, to construe away the statute or the general order of the supreme court.

The next item in the referee's allowance to himself relates to allowance to stenographers of $250 "in adjustment, correspondence, and notices in matters of claims, and other business of the estate." I have been unable to find any provision of the bankrupt law which allows the employment of a stenographer in bankruptcy proceedings, unless it be done by stipulation of the parties and taxed as costs, except as found in section 38a, cl. 5:

"Referees respectively are hereby invested, subject always to review by the judge, within the limits of their districts as established from time to time, with jurisdiction to, * * * upon the application of the trustee during the examination of the bankrupt, or other proceedings, authorize the employment of stenographers at the expense of the estates at a compensation not to exceed ten cents per folio for reporting and transcribing the proceedings."

And this was expressly held by Judge Brown, of the Southern district of New York, in the case of In re Todd, 6 Am. Bankr. R. 89, 109 Fed. 265.

General order 10 (32 C. C. A. xiii, 89 Fed. vi) provides as follows:

"Before incurring any expense in publishing or mailing notices, or in traveling, or in procuring the attendance of witnesses, or in perpetuating testimony, the clerk, marshal, or referee may require, from the bankrupt or other person in whose behalf the duty is to be performed, indemnity for such expense. Money advanced for this purpose by the bankrupt or other person shall be repaid him out of the estate as part of the cost of administering the same."

But this rule furnishes no authority for employing stenographers in "adjustment, correspondence, and notices in matters of claims, and other business of the estate." These words are too general to admit of any allowances whatever, except notices, and the referee is allowed 10 cents, as hereinabove stated, for all notices sent out under the act by order of the court. The item of the referee's account for $250, above referred to, is therefore disallowed.

The next two items may be considered together. They are the items of $150 each, charged by the referee for "14 days' service in reference to findings, with services of stenographer and clerk." These two items were heard by the referee together, and it will be assumed, for the purposes of this decision, that he was engaged for 14 days in taking the proof, investigating the claims, making his finding of facts, and delivering his opinions. These claims were appealed from the referee and finally decided by the court; and the court realizes the fact that the questions involved in the way the cases were presented were complex, difficult, and troublesome, and the allowance

or disallowance of these claims as priority claims involved the entire assets after the mortgagees and specific lien holders were paid. The claims of both banks were rejected in toto as priority claims by the referee, and the referee was affirmed as to the claim of the T. W. House Bank by the court, and was affirmed in part and reversed in part as to the claim of the South Texas National Bank. Suffice it to say that enough of this last claim was allowed as a priority claim to absorb all the assets of the estate after the mortgagees and specific lien holders were paid. Each of these two banks deposited a sum of money with the referee to cover the expenses of the litigation, and out of those sums so deposited with the referee he has appropriated $300 to pay him for his time and labor in the investigation and preparation of his findings of fact and for services of stenographer and clerk. These claims were not allowed in the beginning by the referee, the question of their allowance and of their priority was not raised by the trustee in the mode and manner prescribed by paragraph 6 of general order 21 (32 C. C. A. xxiii, 89 Fed. x), nor was any application to have the testimony perpetuated made by the trustee, as provided by section 38, cl. 5, Bankr. Act. It appears that the questions were raised as to the probating and priority of these claims by the trustee; and the court in this particular case is disposed to waive the formality required by the general order above referred to, and also to waive the formal application required to be made by the trustee for the perpetuation of the evidence, for the reason that what was done in these cases seems to have been done by the consent of the trustee and the attorneys for the claimants, and the testimony taken down by a stenographer and reduced to writing. So far as the court has seen, this is the only claim in which this was done. The testimony as taken down and written out by the stenographer, including the opinion of the referee, contains 163 pages. Allowing three folios to the page and 10 cents per folio (section 38a, Bankr. Act), the referee is entitled for that transcript to the sum of $48.90, and this allowance is sanctioned by rule 35, par. 2 (32 C. C. A. xxxiv, 89 Fed. xiii) which provides that:

"The compensation of referees prescribed by the act shall be in full compensation for all services performed by them under the act or under these general orders, but shall not include expenses * * * in perpetuating testimony, or other expenses necessarily incurred in the performance of their duties under the act and allowed by special order of the judge."

Moreover, general order 10 (32 C. C. A. xiii, 89 Fed. vi) is authority for this allowance, and the proceeding had in these two cases was in conformity to that general order. Each of the Texas banks deposited a sum of money with the referee covering the expenses of perpetuating the testimony; but that general order is not authority for allowing the trustee $10 a day for his services. When taken in connection with paragraph 2 of rule 35 (32 C. C. A. xxxiv, 89 Fed. xiii), it may become authority for an allowance for perpetuating testimony when the party applying to have the service done will make a deposit in conformity with the general order; and testimony may also be perpetuated by stipulation of the parties, and taxed as part of the costs against the losing party, but no construction which can be fairly put

upon that general order will authorize any allowance to the referee, except for the specific purposes named in the order. I think it would be inequitable and unjust, and not in conformity with good faith by the parties, to not allow the referee for the item above specified. As heretofore decided in this opinion, he cannot be allowed anything for his own services in hearing and determining these claims. However harsh the rule may be, it is, nevertheless, the harshness of the law, and not of the court. The $48.90 should be paid equally by the T. W. House Bank and the South Texas National Bank; that is to say, the South Texas National Bank should pay one-half of that sum, and the T. W. House Bank pay the other half of it. It seems, also, from the account current of the referee, that $25 were paid to Evans & Sims for preparing a statement, and $5 were used for witnesses. These sums, not being excepted to, should be allowed, and each of the two banks should pay one-half thereof, and, after the sums above stated are deducted from the deposits made by the two banks, the remainder should be restored to the banks. A portion of the claim of the South Texas National Bank, on review, was allowed; but the circumstances of this case are such that the court is of opinion that the estate ought not to be compelled to pay the costs. This, however, will make no difference, because all the estate goes to the T. W. House Bank anyway.

The next objection to the allowance of the referee is to the item of $743 allowed by the referee to the trustee as commissions on $60,151.84. This opinion, as it applies to the allowance of commissions to the referee, applies with equal force to the allowance of commissions to the trustee. By the very terms of section 48a, Bankr. Act, the trustees are allowed "such commissions on sums to be paid as dividends and commissions as may be allowed by the courts, not to exceed three per centum on the first $5,000 or less, two per centum on the second $5,000 or part thereof, and one per centum on such sums in excess of $10,000." As the trustee in this case has paid no dividends or commissions, he cannot be allowed any commissions for so doing, and the entire item of $743 is disallowed.

In this opinion I have disallowed as commissions all commissions to the trustee, because the estate has paid no dividends, and he was not entitled to commissions under the bankrupt law as trustee on moneys paid by him to mortgagees and to priority or secured creditors. The case, however, presents an aspect that appeals to the equity power of the court. It seems that the M. T. Jones estate held a mortgage of about $45,000 upon all the timber land which constituted the main value of the lumber plant of the bankrupt. The M. T. Jones estate had filed its bill in equity to foreclose that mortgage. Upon consultation between the trustee and the attorney of the M. T. Jones estate, and with the assent of the referee, it was concluded that if this mortgage was foreclosed, and the land was sold under a decree in chancery, separate and apart from the mill properties and other assets of the estate, and bought in by the Jones estate, the mill properties and other assets would be of no value whatever, and that nobody would buy the same, or could afford to buy the same in competition with the Jones estate, and that the latter would there-

fore be enabled to buy in the mill plants and other properties and the real estate not covered by this mortgage at a nominal sum, whereas, if the lands covered by the mortgage and mill plant could be sold all at one time, free from the incumbrance of the mortgage, the whole would bring a much larger sum than if sold separately. It was therefore suggested, and the suggestion adopted and carried out, that the attorney for the Jones estate should prove up his claim in bankruptcy, dismiss his suit in equity to foreclose the mortgage, file a petition with the referee asking for a sale of the property free from any incumbrance, and the appropriation of the proceeds of the sale of the land to the Jones estate, and any excess thereof to go to the bankrupt. Accordingly the petition was filed, and an order made by the referee that the trustee sell the property in conformity with the petition filed by the Jones estate and free from all incumbrances. Separate bids were first had for the mortgaged land, and then separate bids for the other assets, and afterwards the property offered in bulk, and the same was sold. The bid for the mortgaged lands was a sum slightly in excess of the mortgage debt, and accordingly the trustee paid the mortgage debt in full to the mortgagee. The balance of the estate was taken in charge by the trustee to await the final disposition of it by the referee under the bankrupt law. The question now arises whether the trustee, under the equity powers of the court, should be allowed anything for his services for selling the property. The case of In re Utt, 5 Am. Bankr. R. 383, 105 Fed. 754, is a case almost absolutely in point. In that case a decree in equity was had foreclosing mortgages upon certain property held by the bankrupt, and the master in chancery had duly advertised the property for sale, and before the day of sale a creditor of the bankrupt appeared and filed a bill in equity to enjoin the sale under the decree of foreclosure which had been rendered in the state court. The sale was enjoined, and thereupon the judgment creditors in the decree of foreclosure in the state court appeared in the district court of the United States and by petition of intervention asked the court to make an order directing the sale to be made by the trustee in bankruptcy, free from all incumbrances, and out of the proceeds to pay them the amounts of their decrees in the state court. Accordingly the order was made and the property was sold; and on this state of facts the question arose as to whether the trustee in bankruptcy should be entitled to his commissions on the proceeds realized by the sale. The district court allowed the commissions and expenses of the sale, an itemized account of which appears in the statement of the case, including attorney's fees and the like, and the case was taken on a petition for review to the circuit court of appeals for the Seventh circuit. Mr. Justice Woods, in delivering the opinion of the court, held, as hereinbefore stated, that no commissions could be allowed the trustee or the referee under the bankrupt law; but he said:

"The mortgaged property having been sold by the trustee in bankruptcy under the order of the district court, it is equitable and right that the expenses of the sale, including advertising, appraisement, if appraisement was required by law, revenue stamps, and compensation to the trustee, not exceeding that of the master in chancery, if the sale had been made by him under the decree of the state court, should be paid out of the proceeds of the sale."

The only difference in substance between that case and the case at bar is the fact that there had been no decree rendered in favor of the M. T. Jones estate, and no injunction was asked by any creditors to prevent the sale, and no appeal was made to the district court. The whole proceeding was had before the referee. I cannot see, however, that these facts make any material distinction, and equity and common justice require that the trustee should be allowed a reasonable commission for the sale of the property, to be paid out of the estate. It can be no injustice to the estate to pay it, because the probabilities are that, if the mortgaged property had been sold separate and apart, under a decree in chancery, from the other assets of the estate, the latter would have sold for a mere nominal sum. The estate was, in all probability, benefited largely by the procedure, and the step was taken with the knowledge of the counsel for the South Texas National Bank, and, so far as the record is concerned, without any protest. Indeed, if protest had been made, it would have been adverse to the interest of the South Texas National Bank, which is the sole beneficiary in the estate. The commissions allowed, however, should not be in excess of a reasonable sum which would be paid to a master commissioner, had he been directed by an order of the court to sell the property. The property brought $45,500, and a reasonable fee for the service would be $250. The expense account of the trustee having already been allowed, and there being no exceptions thereto, the trustee will therefore be allowed that sum, and any sum in excess of that which he has received under the order of the referee he will be required to restore to the treasury of the court. No allowance can be made to the referee in this connection.

It may be well to suggest, in this connection, for the future guidance of referees and trustees, and for the practice in cases involving questions like those involved in the claim of the M. T. Jones estate, that the proper procedure is expressly provided for by general order 28, and referees and trustees in the future would do well to conform to the practice.