---

### In re CARR et al.

(District Court, E. D. North Carolina. September 5, 1902.)

**1. BANKRUPTCY—DEPOSIT OF FUNDS.**
The funds of an estate in bankruptcy should be deposited to the credit of the trustee as such, designating the estate.

**2. SAME—ALLOWANCE OF ATTORNEY'S FEES.**
Bankr. Act 1898, § 64b, cl. 3, does not make the allowance of an attorney's fee in involuntary cases a matter of right, but gives the court discretionary power, and, where such an allowance is asked for, the attorney must disclose his dealings with his client, that the court may act intelligently in the matter.

**8. SAME—RULE GOVERNING.**
Rule adopted governing the allowance of attorney's fees to the attorney for petitioning creditors in involuntary proceedings in bankruptcy in the Eastern district of North Carolina.

In Bankruptcy. On report for final dividend and settlement. See 116 Fed. 556.

C. F. MacRae, for petitioner.

PURNELL, District Judge. This cause is again presented on a corrected dividend sheet, accompanied by vouchers, and a statement from the depository showing that the amount reported is on deposit to the credit of the trustee. There is no express provision in the bankrupt act as to how funds belonging to bankrupt estates shall be deposited, except in cases of composition, in which section 12b provides deposits shall be subject to the order of the judge. Section 47 (3) requires all funds to be deposited in the designated depository, and (subsection 4) disbursed only by check or draft. The general orders do not provide how deposits shall be made, but No. 29 provides that the checks or drafts on the depositories shall be drawn by the trustee, and countersigned by the judge, or some one, as specified, designated for this purpose by order. As the trustee must in any event sign the checks, it would seem the funds should be deposited to the credit of the trustee, as such, designating the estate in bankruptcy. Some complication has arisen in this respect, and it will simplify the practice for trustees and depositories to follow this rule. The estate is now in a condition for final distribution when the question of attorney's fees is settled. Facts now appear which have not heretofore been disclosed. At best, this is a delicate question, with which, for many reasons, the court is loath to deal, especially when attorneys simply ask for an allowance, and place, without explanation, what seems to be exorbitant value on services rendered. While

¶ 2. See Bankruptcy, vol. 6, Cent. Dig. § 897.

disposed to be liberal to members of the bar, in the exercise of the judicial discretion, the court is restrained by a consideration of the evident intention of congress to make the administration of these estates as economical as possible, and the rights of creditors in whose interest the involuntary features of the act were adopted.  Attorneys lose sight of these matters, and are inclined to confound the discretion to allow fees in bankruptcy with the practice in chancery, and magnify the importance of services rendered under the bankrupt act, when the forms to be used are prescribed and published, hence the services are, in a large measure, perfunctory and clerical.  This court has had occasion in several cases to express views on this subject, and has been much harassed with frequent petitions for the allowance of fees in disregard of these views.  It is unnecessary to refer to or repeat the reported cases, as the whole matter is so well summed up in the opinion of Judge Phillips in Re J. W. Harrison Mercantile Co., 2 Am. Bankr. R., at page 420 (s. c. 95 Fed. 125), as follows:

"The history leading up to the adoption of the present bankrupt law shows that the great abuses under the preceding national bankrupt act, in the way of exorbitant fees, which largely consumed the assets of the bankrupt, whereby the ministerial officers grew rich upon the administration of the act, while the creditors starved, impelled congress, in the adoption of the present bankrupt act, to reverse the practice, so that the bankrupt law should be so administered that the creditors should be the favorites of the courts, rather than the agents assisting the court in the preservation and distribution of bankrupt estates.  The obvious policy of the present act, manifest throughout all its provisions respecting fees and commissions, is to reduce to the lowest minimum the expenses of administration.  This is especially made manifest in the meager fees allowed clerks, referees, and trustees.  Indeed, so inadequate is the compensation allowed to these officers, that it is a matter of happy surprise to the courts that they have been able to secure the services of such competent persons to fill the places of referees and trustees.  And because of the meager compensation allowed by the act to these officers, courts are exposed to the constant temptation to either read into the act some provision not found in its letter, or by the most liberal construction of doubtful or ambiguous terms to augment fees and commissions.  This is a tendency, however, in my judgment, which it is the bounden duty of the court to resist.  It is the duty of the court, from which it cannot honestly escape, in applying this statute, to give it such construction and application as will carry out and effectuate the legislative will.  Any other action by the court is but an attempt to set up and substitute the notions and inclination of the individual judge as to what would be a reasonable compensation for services under this law for that of the legislature, whereas, as already suggested, the court can have no policy in conflict with that of the legislative scheme.  Section 64 of the act authorizes the court in an involuntary proceeding to allow, among claims entitled to priority, 'one reasonable attorney's fee for professional services actually rendered, irrespective of the number of attorneys employed.'  This court discovered, after administering this act for a season, that it was to be plagued and perplexed with what it conceived to be demands enormous in their extent for attorney's fees, both in involuntary and voluntary cases.  The impression among lawyers in this particular seems to be that the proceeding in involuntary cases should be likened to the practice in chancery, and that, where a creditor files a bill in equity to reach the assets of an insolvent debtor for the benefit of creditors generally, an allowance for the attorney of the petitioning creditor should not only be made a charge upon the general fund, but its extent should be the largest liberality of the chancellor.  While the bankrupt act contemplates that the allowance for an attorney's fees shall be taken out of the general fund, it must be a reasonable attorney's fee."

For future guidance in this matter, there being no rule on the subject in the district now, the following rule will be adopted: For preparing petition in involuntary bankruptcy, and superintending the filing thereof, and in the issuance of subpœna thereon, and preparing schedules, in case such duty falls on the petitioning creditors, a fee of not exceeding $50, in the discretion of the court, where the same is payable out of the estate of the bankrupt; and no further fee shall be allowed such attorney where there is no contest or trial before the court touching the adjudication in bankruptcy; and in case the defendant therein contests the adjudication, necessitating a trial before the court or referee of such issue, such further fee as the court may find to be reasonable in the particular case. And for the allowance of this fee, as said in Re Smith, 108 Fed. 39, 5 Am. Bankr. R. 559, the attorney asking for such fee must disclose his dealings with his client, that the court may act intelligently. The words of the statute do not sustain the view that the allowance of an attorney's fee in a bankruptcy cause is a matter of right. The statute says "the court may allow," thus lodging in the court a discretion to allow an attorney's fee, to be paid out of the estate.

There having been no specific rule on this subject, it would be manifestly unfair to apply this rule to the case at bar. Notwithstanding the rule, in exceptional cases the allowance of an attorney's fee will be made when, in the discretion of the court, the circumstances warrant a more liberal allowance.

As to the attorney for the petitioning creditors, the facts now appear to be (which were not heretofore disclosed) that Beck & Gregg, the largest creditor of the bankrupt, employed C. F. MacRae, Esq., to file a petition in bankruptcy, agreeing to pay him $100 for this service, which they now decline to pay, and he has received nothing. More than one-half of the final dividend will go to this firm. Under these circumstances, the court will protect attorneys, and tax costs. Sections 2–18. The referee will enter upon the dividend sheet an allowance of $150 to the attorney for the petitioning creditors, and $125 allowance to the attorney for the bankrupt. The draft for the dividend for the petitioning creditors will be made payable to their attorneys, and, if such dividend is not sufficient to cover the fee allowed their attorney, the balance of the fee hereinbefore allowed will be paid by draft out of the general fund.