### In re GOLDVILLE MFG. CO.

(District Court, D. South Carolina. May 29, 1903.)

1. BANKRUPTCY—ALLOWANCE TO ATTORNEYS—FUND PRODUCED BY MORTGAGED PROPERTY.

Where mortgaged property was by agreement sold by order of the bankruptcy court, neither the attorney for the petitioning creditors, who unsuccessfully contested the validity of the mortgage, nor the attorney for the bankrupt, is entitled to an allowance of fees from the fund produced, which belongs to the mortgage creditors, since they were in no way benefited by the bankruptcy proceedings.

2. SAME—REASONABLE ATTORNEY'S FEES.

While courts of bankruptcy are given discretion to allow reasonable attorney's fees to the attorneys for the petitioning creditors and for the bankrupt in involuntary proceedings, such discretion must be controlled by the general policy of the law, which requires estates to be administered with severe economy; and what constitutes a reasonable allowance depends to a large extent upon the amount of the estate to be distributed.

3. SAME—ALLOWANCE TO BANKRUPT'S ATTORNEY.

The discretion to allow a reasonable attorney's fee to a bankrupt in involuntary cases is limited to an allowance for such services as are

---

¶ 3. See Bankruptcy, vol. 6, Cent. Dig. § 897.

rendered in the performance of the bankrupt's duties, prescribed by the act, and which are in aid of the administration of the estate.

**4. SAME—COMMISSIONS OF REFEREE—PROCEEDS OF MORTGAGED PROPERTY.**

Under Bankr. Act July 1, 1898, c. 541, § 40, 30 Stat. 556 [U. S. Comp. St. 1901, p. 3436], prior to the amendment of 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 797), a referee is not entitled to commissions on the proceeds of mortgaged property, sold by order of the court of bankruptcy, and which are paid to the mortgagee.

**5. SAME—SERVICES OF REFEREE AS SPECIAL MASTER.**

A referee, to whom the contested claim of a mortgagee was referred as special master, and who took testimony thereon, the result being that the mortgage was sustained, may be given an allowance for his services from the proceeds of the mortgaged property.

In Bankruptcy. On applications of attorneys and referee for allowance of fees.

D. W. Robinson, for creditors and trustee.

Miller & Whaley, for bondholder creditors.

N. B. Dial and Wm. H. Lyles, for other creditors.

Geo. Johnstone, for bankrupt.

BRAWLEY, District Judge. The attorney for the petitioning creditors asks for the allowance of a fee of $3,000 in this case, and has offered his own testimony and the testimony of several reputable attorneys that this sum would be a reasonable compensation for the services-rendered. The attorney for the bankrupt has presented a similar claim, and, as the court is of opinion that it cannot properly make an allowance at all commensurate with the desires and expectations of the attorneys interested, it will state its views as to the nature and limitations of its power to make allowance for fees out of the estates of bankrupts.

The Goldville Manufacturing Company was a corporation engaged in the manufacture of cotton yarns, and had issued bonds to the amount of $75,000, secured by a mortgage of its lands, buildings, and machinery. Becoming unable to meet its obligations as they matured, proceedings were instituted in the state court by some of the bondholders, praying the foreclosure of the mortgage, and a receiver was appointed and put in possession of the mortgaged property, whereupon a petition in involuntary bankruptcy was filed in this court by certain unsecured creditors, praying its adjudication as a bankrupt. The corporation answered, setting up as a defense to said petition that the appointment of a receiver was not an act of bankruptcy, that the corporation was not insolvent, and that many of the petitioners and others claiming to be creditors of the corporation were not creditors of the company, but that their claims were against the Blalocks individually and as partners, who had conducted business under the name of the "Goldville Company" prior to the organization of the corporation. Upon the issues thus made a great deal of testimony was taken and arguments presented; the whole involving much time, labor, and expense The company undertook to show, and introduced a good deal of testimony tending to prove, that its property at a fair valuation was sufficient to pay all of its own proper obligations, and the court was so far impressed by the showing made that it hesitated to make

the adjudication prayed. In the course of the several hearings it became manifest to it that it would be greatly to the interest of all concerned that the company and its creditors should come to some agreement upon some plan of reorganization fair to all parties, and it made known its views to the counsel concerned, stating at the same time that it had no control over the proceedings for the foreclosure of the mortgage in the state court, and that an adjudication in bankruptcy might produce complications, and the expense of the litigation in this court and in the state court would be injurious to all parties. With this intimation it withheld its decision upon the questions submitted, so as to give parties time to come to some agreement, and within a reasonable time thereafter the Goldville Company consented to an order of adjudication. Thereupon the trustee under the mortgage filed its petition in this court praying the foreclosure of the mortgage, and the proceedings in the state court were discontinued. The validity of the mortgage and the bonds secured thereby was contested, and the decision of this court, sustaining their validity, has been lately affirmed by the Court of Appeals of this circuit. 122 Fed. 569. The mortgaged property was sold under the decree of foreclosure, and brought $62,500, which sum is nearly sufficient to pay in full the debts secured. The property not embraced in the mortgage has also been sold, but the trustee has not yet made his final report, showing the exact amount for distribution among the unsecured creditors, but from statements furnished the amount will probably be about $2,800.

The receiver and trustee and his attorney have presented claims for compensation. I am of opinion that the attorney for the petitioning creditors and the attorney for the bankrupt corporation cannot, in the circumstances, demand or receive an allowance out of the fund derived from the sale of the mortgaged property. Nothing that has been done by the petitioning creditors in the proceedings in bankruptcy was intended for or has inured to the benefit of the lien creditors. They were foreclosing their mortgage in the state court, where they had a right to be and to remain. In discontinuing their proceedings in the state court, and in filing their petition for foreclosure in this court, they have been represented by their own attorneys, and the bankruptcy proceedings have been of no benefit to them. They make no claim upon the fund in the hands of the trustee for distribution among the unsecured creditors, and it seems to the court that the unsecured creditors and their attorneys have no claim upon their fund. Section 67d of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 564, 565 [U. S. Comp. St. 1901, p. 3449]), declares that:

"Liens given and accepted in good faith, etc., shall not be affected by this act."

Of course, all the costs of the court, and all expenses incurred in the care, preservation, and sale of the mortgaged property, are proper claims against the sum realized from the sale of it; but the fees here asked for cannot be considered as in the nature of costs of court and expenses necessarily incident to the preservation of their fund. If this conclusion is correct, it follows that the fund in the hands of the court for distribution is entirely insufficient to pay what the attorney for the

petitioning creditors and the attorney for the bankrupt consider fair compensation for services rendered. If their claims are reduced one-half, it would absorb the whole fund, and there would be nothing for distribution among the creditors. The power of this court to make any allowances at all in cases of this nature is under section 64b of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), which defines and limits its power. It is in the third subdivision of that section, in the words following:

"(3) The cost of administration, including the fees and mileage payable to witnesses, as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases as the court may allow."

The claim of the attorney for the petitioning creditors rests upon what the court deems an erroneous view, that the service rendered is like that of filing a creditors' bill in chancery to marshal the assets of an insolvent estate, where assets which would otherwise have been lost are recovered, and the estate is administered for the benefit of all creditors who come in and share in the results accomplished. In such cases courts of chancery properly consider the exacting nature of the work done, responsibility assumed, and results accomplished, and may deal out compensation with a liberal hand; but in this case the mere fact of the adjudication in bankruptcy has not enabled the secured creditors to reach a fund which might otherwise have been lost. It has not added to the value of the security that they had under their mortgage, or provided them with any additional remedy. The most that can be said is that it has opened the door of this forum, where, by proceedings in rem, instituted by their own attorneys, they have secured a foreclosure of the lien which the bankrupt act declares "shall not be affected by it." They were already proceeding to foreclose their lien in another forum, where it is presumed they would have obtained equal results; and it would not seem consonant with any principle of justice, after opening the door to them, and inviting them to come in, so that the whole estate might be administered, to tax them for the payment of services not rendered at their request or for their benefit, and to deplete the fund to which they are entitled under their lien, for the compensation of an attorney who has pertinaciously, but unsuccessfully, endeavored to deprive them of it. The only fund brought into the court for administration by the bankruptcy proceedings, which otherwise would not be here, is the fund of about $2,800 for distribution among the unsecured creditors, and this fund must be administered in accordance with the spirit of the bankrupt law.

It is a part of the history of the country that one of the causes which led to the repeal of the bankrupt act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517) was the great abuse, under the former law, whereby the estates of bankrupts were consumed by the ministerial officers of the court in enormous costs and charges; and it was the clear intent of the present bankrupt law that they should be administered for the benefit of the creditors. This is manifest through all the pro-

visions respecting fees and commissions. The compensation allowed to clerks, referees, and trustees is so meager that it is a matter of some surprise that the courts have been able to secure persons of any competency to administer the law. Under the former act legal services rendered to the bankrupt were not allowed as a claim entitled to priority, but under the present law such claims are allowed priority in the discretion of the court; but that discretion should be exercised to carry out and effectuate the legislative will, and the courts cannot honestly disregard the manifest policy of the law, which looks to great economy of administration. If they enforce strict compliance with the statute on the part of ministerial officers with respect to such fees and allowances as are prescribed by law, they cannot refuse to be bound by its limitations in matters that are left to their discretion. That discretion must be in accordance with, and not in conflict with, the policy of the law.

These creditors, dissatisfied with the proceedings in the state court, which looked to the administration of the estate there, invoked the jurisdiction of the federal court. This was their absolute right, if they could make a case showing jurisdiction, and by the withdrawal of opposition to the adjudication in bankruptcy jurisdiction attached. Jurisdiction for what? Simply to administer the estate according to law. The law required that the liens should be respected, and the only practical result was to impound in this court, for collection, administration, and division among the creditors represented by the petitioner and other creditors in the same class, such property as was not covered by the lien. This is all that they could obtain, here or elsewhere. The court is not unmindful of the great zeal displayed, and the labor done and the expense involved; and if the result of the efforts to set aside the mortgage had been successful, and a fund of over $60,000 had been obtained for distribution among the unsecured creditors, the attorney for petitioners would have been entitled to large compensation, and the estimate put upon that service by the distinguished attorneys who have testified, would not be considered excessive; or, if the court had directed the trustee to contest this mortgage for the benefit of the creditors generally, an attorney employed for that purpose would be fairly entitled to payment out of the fund for services rendered, whether they were successful or unsuccessful; but this is not that case Certain creditors, of their own volition, have chosen to contest the mortgage, and their attorney, like any other who takes a desperate case with the expectation of a fee contingent upon the result, to be large, if successful, must abide the result; or the service may be likened to that in salvage cases in the admiralty, where salvors receive no remuneration if nothing is salved, however arduous their efforts and however great may be their expenditures of money and time. The common reward of those who fight for lost causes is the consciousness of duty done. The Supreme Court of the United States in Hobbs v. McLean, 117 U. S. 582, 6 Sup. Ct. 877, 29 L. Ed. 940, has stated the principle which governs:

"When many persons have a common interest in a trust property or fund, and one of them, for the benefit of all, and at his own cost and expense, brings a suit for its preservation or administration, the court of equity in

which the suit is brought will order that the plaintiff be reimbursed his outlay from the property of the trust, or by proportional contribution from those who accept the benefits of his efforts. * * * But where one brings adversary proceedings to take possession of trust property from those entitled to it, in order that he may distribute it to those who claim adversely, and fails in his purpose, it has never been held in any case brought to our notice that such person had any right to demand reimbursement of his expenses out of the trust fund, or contribution from those whose property he sought to misappropriate."

Mr. Justice Bradley, in Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, discussing the general question of allowances, says:

"But there is one class of allowances made by the court which we consider decidedly objectionable. We refer to those made for the personal services and private expenses of the complainant. In England and some of the states no such allowance is made, even to trustees, eo nomine. In other states it is, but the complainant was not a trustee. He was a creditor, suing on behalf of himself and other creditors, for his and their own benefit and advantage. The reasons which apply to his expenditures in carrying on the suit, and reclaiming the property subject to the trust, do not apply to his personal services and private expenses. We can find no authority whatever for any such practice by a person in his situation. Where an allowance is made to trustees for personal services, it is made with a view to secure greater activity and diligence in the performance of the trust, and to induce persons of reliable character and business capacity to accept the office of trustee. These considerations have no application in the case of a creditor seeking his rights in a judicial proceeding. It would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interest of creditors, and that, perhaps, to only a small amount, if they could calculate upon the allowance of a salary for their time and having all their expenses paid. Such an allowance has neither reason nor authority for its support."

From the schedule of claims proved before the referee and allowed, it appears that the attorney for petitioners represented creditors holding less than one-third of the claims proved. In their interest he undertook a litigation which proved to be unsuccessful, and a large part of the expense for which he seeks reimbursement was thus incurred. It is clear that he cannot claim reimbursement out of the fund covered by the mortgage. The only fund, therefore, out of which he can be paid, is that in the hands of the trustee not covered by the mortgage lien, which amounts to about $2,800. This fund is in court for distribution among all the unsecured creditors. It was not created or added to by the services of the attorney for the petitioning creditors, except in the sense that it was brought into this court by the petitioners who filed the proceedings in involuntary bankruptcy. Under Act July 1, 1898, c. 541, § 64b, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], the court must allow a "reasonable attorney's fee" to the attorney for the petitioning creditors. The amount of the estate must to a large extent govern its discretion in determining what is "reasonable," and it must be controlled by the general policy of the law, which requires such estates to be administered with severe economy. In the circumstances, it is considered that $250 is a reasonable allowance, and all that is properly chargeable against the estate. For a general discussion of this subject see In re J. W. Harrison Mercantile Company, 2 Am. Bankr. R. 420, 95 Fed. 123; In re Curtis, 4 Am. Bankr. R. 28, 100 Fed. 784, 41 C. C. A. 59; In re Charles Mayer, 4 Am. Bankr. R.

240, 101 Fed. 695; In re Frick, 1 Am. Bankr. R. 720; In re Rozin-sky, 3 Am. Bankr. R. 831, 101 Fed. 229.

Section 64b (3), already cited, provides for an allowance "to the bankrupt in involuntary cases while performing the duties herein pre-scribed," one reasonable attorney's fee as part of the cost of adminis-tration. This limits the discretion of the court in the allowance of a fee to the bankrupt's attorney to a compensation to such attorney "for performing the duties herein prescribed." Section 7 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424]), prescribes the duty of a bankrupt, which is to attend the first meeting of his creditors, if directed to do so; to comply with all the lawful orders of the court, examine the correctness of all proofs of claims, and execute any transfers of property in foreign countries; to inform the trustee of any attempt by his creditors to evade the pro-visions of the act; and to disclose his knowledge of any false claim against his estate, and prepare a schedule of his property, with a list of his creditors, etc. All of these are in aid of the administration of the estate, and for any such services it is proper that the estate should be chargeable. It would appear from the testimony of the attorney for the bankrupt that the claim for compensation is predicated mainly upon the assumption that the bankrupt estate is chargeable for services rendered in resisting the adjudication, and to some extent for services rendered in the state court in and about the appointment of a receiver. The greater part of the service of which the court has personal cognizance was in resisting the adjudication in bankruptcy. However arduous and meritorious these services may have been, they were in the interest of the stockholders of the bankrupt corporation, in the hope, which proved delusive, that something might be saved for them from the wreck; for the event proved that it was hopelessly insolvent. It seems probable, too, that it was considered advantageous to the lien creditors to resist the adjudication in bankruptcy, as they were pro-ceeding to foreclose their mortgage in the state courts, and an adjudi-cation here might have produced complications which they desired to avoid. As the withdrawal of opposition to the adjudication was in pursuance of a stipulation, to which they were parties, wherein it was provided that said attorney should "receive such compensation as the bankrupt court shall allow for his services in the bankrupt court, as well as for services heretofore rendered by him in the state court," it seems clear that said attorney has a claim for compensation out of the fund belonging to the lien creditors for any service rendered by him in this court or in the state court, which was to their advantage; and the court has been informed that there was an understanding to that effect, which will doubtless be carried out, or, if not, it will hereafter consider and decide upon this claim, when presented against the fund distributable among the lien creditors. It will determine now only the amount that should be allowed out of the bankrupt estate dis-tributable among the unsecured creditors. As the court said, in Re Charles Mayer, 4 Am. Bankr. R. 240, 101 Fed. 695:

"The terms of the provision for the services of an attorney to the bankrupt in involuntary cases, while performing the duties herein prescribed, are thus limited in strict accord with the general tenor and spirit of the enactment,

and neither express nor intend an allowance for the defense of the bankrupt through the course of these proceedings in matters involving his personal liability, civil or criminal. The duties to be performed by the bankrupt in the proceedings are prescribed in section 7, and all relate to attendance and services of presumptive benefit to the estate, with the possible exception of attending at the hearing upon his application for a discharge. The preparation of schedules by the bankrupt in involuntary cases, and his attendance on compulsory examination before the referee, are matters in discharge of his duty for the benefit of the estate, and each may require the services of an attorney, for which the estate thus receiving the benefit is chargeable for reasonable compensation; but, in conformity with the purpose of the act, the allowance must be made sparingly and with great caution."

The preparation of the schedules of the bankrupt corporation was a service in aid of the administration, and an allowance must be made therefor. So, too, any service rendered in aid of the estate in examining the correctness of all proofs of claims and the disclosure of any false claims against the estate. The attorney for the trustee has filed a claim for compensation for services rendered successfully in causing the rejection by the referee of a number of claims which were adjudged to be not valid claims against the bankrupt corporation, and it is stated by the attorney for the bankrupt that he furnished the information which led to the rejection of the claims. Some account is to be taken of such service; but, in view of the fact that the attorney for the trustee actually performed the service, and of the further fact that the estate is so small that the rejection of claims will not add any considerable amount to the dividends to be paid, the court feels that, if the unsecured creditors are to receive any dividend at all, it will be compelled to reduce the allowance to attorneys to an amount which may not seem at all commensurate with the services rendered.

The test for compensation is whether the service was rendered in performance of the bankrupt's duty to aid in the administration of his estate, and the amount of the estate and its character must be considered in determining what is a "reasonable" allowance. Considering that the amount of the estate is only $2,800, that the preparation of the schedules was mainly work of a clerical character, and that the only other service in aid of the estate was the furnishing of information which enabled the attorney for the trustee to secure the rejection of false claims, for which he also must be paid, I am of opinion that an allowance of $200 is a reasonable fee for the attorney of the bankrupt, to be paid out of the fund distributable among the unsecured creditors, and will reserve a decision as to the amount that may be chargeable on the fund belonging to the lien creditors. The attorney for the trustee is entitled to compensation for services rendered before the referee, wherein claims amounting to about $40,000, which were presented against the bankrupt estate, were successfully resisted, and a fee of $200 is allowed for such service.

The next question for decision relates to the compensation of the referee. Section 40 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 556 [U. S. Comp. St. 1901, p. 3436]) provides as follows:

"Referees shall receive as full compensation for their services, payable after they are rendered, a fee of $10 deposited with the clerk at the time the petition is filed in each case, except when a fee is not required from a voluntary bankrupt, and from estates which have been administered before

them one per centum commissions on sums to be paid as dividends and commissions, or one-half of one per centum on the amount to be paid to creditors upon the confirmation of a composition."

In view of the utterly inadequate compensation which referees would receive for laborious and meritorious services, which would frequently be rendered in cases where the estates were small, this court made a general rule several years ago, providing for additional compensation to referees in cases where matters in litigation were referred to them as special master. In the amendments to the bankruptcy act approved February 5, 1903 (32 Stat. 797, c. 487), this rule will be abrogated; but, as the services here were rendered before that date, it is conceived that the court has the power to make an allowance to the referee as special master. Whether the referee is entitled to commissions upon the fund derived from the sale of mortgaged property, which has been sold by order of the court in bankruptcy, is a question upon which there have been divergent decisions. Among those holding that the referee is entitled to such commissions, the most important, and that which is relied upon by the referee, is that of Judge Lochren in Re Barber, 3 Am. Bankr. R. 307, 97 Fed. 547. One of the latest cases holding the contrary view is In re Mammoth Pine Lumber Company (D. C.) 116 Fed. 731, wherein most of the cases on the subject are reviewed. The case of In re Utt, 5 Am. Bankr. R. 383, 105 Fed. 754, 45 C. C. A. 32, is the only case brought to my attention from any Circuit Court of Appeals. In that case the opinion was delivered by Woods, Circuit Judge, to the effect that sums to be paid upon secured claims, or other claims entitled to priority of payment, are not "dividends" upon which the trustee may receive a commission. While this opinion is not controlling within this circuit, the great ability of the judge who delivered it gives it great weight, and I am of opinion that the contrary view rests on considerations of reasonableness and justice, rather than upon the terms of the statute.

Section 64b prescribes what debts are to have priority and to be paid in full out of bankrupt estates, and after providing the order of payment, first taxes, then costs of administration and certain wages, the fifth subdivision provides for the payment in full of "debts owing to any person who, by the laws of the states or the United States, is entitled to priority"; and section 65 provides that "dividends of an equal per centum shall be declared and paid on all allowed claims except such as have priority or are secured." While the act does not define what a "dividend" is, this section seems to indicate what, in the legislative mind, was meant by the term "dividends"; and that was the aliquot portion of the bankrupt estate, which was to be divided proportionally among the creditors after the payment of such claims as were entitled to priority by the act, and which were to be paid in full. If that is the meaning of the act, it would follow that the referee is not entitled to commissions on the fund belonging to the secured creditors. "We are bound," says Justice Buller, in Jones v. Smart, 1 T. R. 44, "to take the act of Parliament as they have made it"; and courts cannot, by construction, undertake to correct what may be considered imperfect legislation.

Inasmuch as this case was referred to the referee as special master, and it appears from the record that he took the testimony therein, holding two references, one at Charleston and one at Laurens, a distance from his home, it is considered that he is entitled to compensation as special master, out of the fund derived from the sale of the mortgaged property; and the sum of $250 is adjudged to be a reasonable compensation for such service, and he will be allowed out of the other fund the commissions fixed by law and any reasonable expenses incurred by him.