### In re LANE LUMBER CO.

#### (District Court, D. Idaho, N. D.    July 7, 1913.)

**1. BANKRUPTCY (§ 458\*)—REFEREE'S RULINGS—REVIEW.**
Formal exceptions to a referee's ruling allowing fees to a bankrupt's attorneys were not essential to a review thereof on appeal.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 918; Dec. Dig. § 458.\*]

**2. BANKRUPTCY (§ 482\*)—BANKRUPT'S ATTORNEY—FEES—"DUTIES."**
Bankr. Act July 1, 1898, c. 541, § 64b, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), provides for the payment out of the bankrupt's estate of the costs of administration, including one reasonable attorney's fee for professional services actually rendered to the bankrupt in involuntary cases while performing the duties prescribed in the act. *Held,* that the "duties" referred to in such section are those prescribed by section 7, requiring the bankrupt to attend the first meeting of creditors if so directed, to prepare schedules, and to submit to examination at such other times as the court shall order concerning the conduct of his business, etc.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.\*
For other definitions, see Words and Phrases, vol. 3, pp. 2283, 2284; vol. 8, p. 7646.]

**3. BANKRUPTCY (§ 482\*)—ATTORNEY FOR BANKRUPT—FEES—ALLOWANCE.**
Fees are only allowable to a bankrupt's attorney out of the estate in bankruptcy, where the services are such that by operation of law an obligation to pay for them is imposed on the estate, and where reasonably necessary to enable the bankrupt to discharge his duties under the law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.\*]

**4. BANKRUPTCY (§ 482\*)—ATTORNEY FOR BANKRUPT—SERVICES—NATURE AND CHARACTER—EVIDENCE.**
Evidence of a bankrupt's attorneys that certain charges for advice to the bankrupt on three different occasions referred to proceedings to recover the bankrupt's books from a receiver after bankruptcy proceedings had been instituted and prior to the time schedules were filed, without showing that any application had been made to the court for an order concerning the books, was not sufficiently certain to authorize an allowance therefor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.\*]

**5. BANKRUPTCY (§ 482\*)—BANKRUPT'S ATTORNEY—FEES.**
Where a bankrupt's trustee was opposing the allowance of a claim of the bankrupt's receiver for fees, expenses, and attorney's fees, as were

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

also some of the bankrupt's creditors, the bankrupt's attorneys were not entitled to assist in such proceedings at the expense of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.*]

6. BANKRUPTCY (§ 114*)—COERCION BY COURT.

Where a federal court receiver, in charge of the assets of a bankrupt corporation, refuses to permit inspection of the books of the bankrupt by its trustee, appointed in the same court, the receiver may be compelled to give access to the books by an order made to the court on an informal application.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 164–166; Dec. Dig. § 114.*]

7. BANKRUPTCY (§ 482*)—SCHEDULES—EXPENSE—ATTORNEY'S FEES.

Where the schedules of the assets and liabilities of a bankrupt corporation covered approximately 100 pages of typewritten matter and could have been prepared by any competent accountant, the fact that they were prepared by the bankrupt's attorneys did not entitle them to charge for attorney's services in preparing the same; and hence they were not entitled to more than $285 for such work.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.*]

8. BANKRUPTCY (§ 482*)—BANKRUPT'S ATTORNEY—PROFESSIONAL SERVICE—COMPENSATION.

In determining the reasonable value of services rendered to a bankrupt by its attorneys, neither the assets nor the liabilities of the estate represent or measure the value of the matter involved.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.*]

9. BANKRUPTCY (§ 482*)—BANKRUPT'S ATTORNEY—SERVICES—ATTENDANCE ON HEARINGS—RIGHT TO FEES.

Since a bankrupt, when ordered to appear for examination at the first meeting of creditors and sessions of the court, either to give information or submit to examination under oath, is not ordinarily entitled to counsel, where there was no order of the referee requiring the bankrupt's counsel to attend a charge of $1,850 for attendance in the bankruptcy court at irregular intervals from August, 1911, to November, 1912, 37 different days at $50 a day, during which time the bankrupt's officers were being examined, would be reduced to $100.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.*]

In the matter of bankruptcy proceedings of the Lane Lumber Company, bankrupt. On objections to a referee's order allowing a claim for fees to the bankrupt's attorneys. Referee's order reversed, with directions to allow the claim for a reduced amount.

Whitla & Nelson, of Cœur d'Alene, Idaho, for claimant.

E. N. La Veine, of Cœur d'Alene, Idaho, for trustee.

James A. Wayne, of Wallace, Idaho, for objecting creditor.

DIETRICH, District Judge. A general creditor and the trustee, feeling aggrieved by an order of the referee allowing in full a claim of the attorneys for the bankrupt for fees aggregating $2,750, have brought the matter here upon a petition for review, in which they both join.

[1] The respondents' objection that the order cannot be reviewed because no exception was taken at the time is not well founded in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

law. While the course pursued by the trustee and the objecting creditor in not appearing and resisting the claim at the hearing before the referee cannot be commended, it is thought that formal exceptions are not essential to the right of review. The general rule, with its qualifications, is correctly stated in Collier on Bankruptcy (9th Ed.) p. 609, where it is said:

"A referee's findings of fact may be reviewed, although no formal exceptions to his decision are filed, where such filing is not required by a rule or order of the court. The court will not ordinarily consider for the first time questions not raised below, or issues not presented by the record; if a point is presented by the record the District Court may consider it although it was not discussed before or by the referee. The court is not barred by or confined to the matters certified by the referee; under its broad general powers it may consider any point presented by the record."

See, also, Loveland on Bankruptcy, vol. 1, §§ 94, 95.

[2] I pass to a consideration of the merits. The provision of law upon which the claimants rely is found in section 64b of the Bankruptcy Act, where it is declared that costs of administration, including "one reasonable attorney's fee, for the professional services actually rendered * * * to the bankrupt in involuntary cases while performing the duties" in the act prescribed, must be paid in preference to certain other of the indebtedness of the estate. The "duties" referred to are imposed by section 7 of the act, which, in so far as it is thought by the claimants to be material, is as follows:

"Sec. 7. Duties of Bankrupt. (a) The bankrupt shall (1) attend the first meeting of his creditors, if directed by the court or a judge thereof to do so, and the hearing upon his application for a discharge, if filed; * * * (8) prepare, make oath to, and file in court, within ten days, unless further time is granted, after the adjudication, if an involuntary bankrupt, * * * a schedule of his property, showing the amount and kind of property, the location thereof, its money value in detail, and a list of his creditors, showing their residences, if known, if unknown, that fact to be stated, the amounts due each of them, the consideration thereof, the security held by them, if any, and a claim for such exemptions as he may be entitled to, all in triplicate, one copy of each for the clerk, one for the referee, and one for the trustee; and (9) when present at the first meeting of his creditors, and at such other times as the court shall order, submit to an examination concerning the conduct of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate."

[3] In considering the several items of the claim, it must be borne in mind that while no objection is made because it is in the name as well as upon behalf of the attorneys, and is not presented directly by the bankrupt itself, there is no contractual relation between claimants and the court or the estate; they were employed, not by the trustee, but by the bankrupt. For any service rendered to and accepted by the bankrupt it is doubtless liable, but here we are concerned only with the liability of the estate, and its liability is limited to a reasonable compensation for such services, and no others, as fall within the terms of the statute. In re Connell & Sons (D. C.) 120 Fed. 846. To warrant any allowance it must first appear not only that services were rendered and were valuable, but that the conditions were such

that by operation of law an obligation to pay therefor is imposed upon the estate. The inquiry here, therefore, has three branches: Was a service performed? Was such service reasonably necessary to enable the bankrupt to discharge its duties under the law? And what was it reasonably worth? The burden is upon the claimants to make a prima facie showing upon each of these three heads.

The first items in the account are as follows:

1911.

| Aug. 4. | Advice relating to bankruptcy proceedings instituted against the bankrupt | $25 00 |
| Aug. 7. | Advice and services relative to bankruptcy proceedings | 15 00 |
| Aug. 12. | Advice and services relative to bankruptcy proceedings | 15 00 |

[4] The adjudication was made upon August 1, 1911, and to what the advice and service here charged for pertained is by the statement of account left wholly to conjecture. The only evidence pertaining to the items is the testimony of one of the claimants, as follows:

"And in regard to the advice for which we charged $25 in one instance, and $15 in two other instances, these were matters connected with the Connolly receivership after the bankruptcy proceedings had been instituted and prior to the time schedules were filed or application made to the court for an order. It was relative to getting possession of the books so that we could decide certain matters and things, and in connection with that I can't say at this time in detail what they were, but I made the charge at the time the services were performed, and I considered them reasonable at the time."

But this evidence is altogether too vague and uncertain to serve as the basis for a conclusion that the services were reasonably necessary to enable the bankrupt to perform its duties, or for a finding of the value thereof. In the most favorable view the testimony may be construed as suggesting, not showing, that the advice may have related to the preparation of the requisite schedules; but for all services connected with that duty a distinct charge of $750 is made, which charge, it is to be inferred from the testimony, was also intended to cover the proceedings to secure possession of the bankrupt's books and papers from the receiver. It is therefore held that the showing was insufficient to warrant the referee in allowing any one of the three items.

[5] We next consider the following charge:

"Aug. 24. Preparing proceedings, including objections and brief on objections, and contesting receiver's claim for the allowance of fees and expenses to himself and attorney's fees, $100.00."

However commendable the motive which prompted the bankrupt to participate in this contest, its zeal was misdirected. It was certainly under no legal obligation in the premises. It was the trustee's function and his duty, and it was also the right of the creditors, to oppose baseless claims, including any such claim, when put forward by the receiver; the extent of the bankrupt's obligation was to furnish to the trustee such material information as was in its possession. As a matter of fact, the trustee was making opposition to this claim, as were also some of the creditors, and to permit the bankrupt to employ counsel at the expense of the trustee when the trustee was already represented by counsel would be to sanction a wholly unnecessary charge against the estate.

The next is an item of $750 for the preparation of the schedules. This being a duty clearly imposed upon the bankrupt, we have but to consider the nature and extent of the legal services necessarily involved therein and the reasonable value thereof. Unquestionably a measure of professional knowledge and skill is required for the proper discharge of such a duty, and perhaps in almost every case some allowance upon this account may properly be made, but I had supposed that rarely, if ever, could the amount exceed $100, and commonly a much smaller sum would be adequate. In re Mayer (D. C.) 101 Fed. 695; In re O'Hara (D. C.) 166 Fed. 384; In re Christianson (D. C.) 175 Fed. 867; In re Connell & Sons (D. C.) 120 Fed. 846.

It is, however, contended that the case is an unusual one, and assuming it to be such we shall consider it upon its own merits. It is to be borne in mind that the duty of preparing the schedules is primarily imposed upon the bankrupt. He may secure such clerical and legal assistance as are reasonably necessary, but he cannot at the expense of the estate employ attorneys and shift to them the entire burden and responsibility. The statute provides that the *bankrupt* shall "prepare, make oath to, and file in court" the schedule, setting forth certain facts; and it was contemplated that he should at least furnish the requisite information, and that the assistance provided for him at the expense of the estate would extend only to the matter of putting the information into the prescribed legal form.

It is not thought to be necessary to attempt a fine distinction between the duties which are strictly professional and those which are merely clerical, in the preparation of a schedule, but in estimating the compensation which should be allowed respect must be had to the nature of the work, for the compensation should be measured with regard to the character and quality of the service rather than the calling or profession of him by whom the service is rendered. Now it is not to be questioned that ordinarily the work of preparing a schedule is in the main that of an intelligent accountant. In re Goldville Mfg. Co. (D. C.) 123 Fed. 579, 586. With a few simple instructions touching the required contents of the schedule, the various headings under which assets and liabilities should be classified, and the formalities of execution, no competent accountant should experience serious difficulty in substantially complying with the law. In so far as we are advised by the record, the present case is no marked exception to the general rule in so far as necessary legal services are concerned; and indeed it is difficult to see how any difficult or intricate questions could be involved in any such case. It is not for the bankrupt carefully to consider whether his title to property claimed by him is vulnerable or invulnerable, or with nicety to determine the exact status of debts which it is claimed he owes. The officers of the court, as well as parties in interest, are chiefly concerned in being advised of the facts to such an extent that they may make intelligent investigation. The schedule adjudicates nothing, and is binding upon no one; at most, it may in certain contingencies be regarded as prima facie evidence of the facts therein stated. It must therefore be held, I think, that in the main the services here rendered were such as a competent clerk or

accountant might have performed, and compensation must be awarded upon that basis. I cannot attach much importance to the fact that the books and papers were in the hands of a receiver at the time the order was made requiring the bankrupt to file schedules, for I am unable to see how or why any considerable amount of service could have been required to get possession of the books.

[6] The receiver was an officer of this court, and if he was, either in good faith or bad, withholding the books from the inspection of the bankrupt, I must assume that upon the most informal application to the referee an order would have been made requiring him, under proper conditions, to give access to the books.

[7] Unfortunately there is wanting definite information touching one, if not the most important, factor entering into the consideration of the amount to be allowed upon this account, and that is the time which was actually and necessarily spent. If there were any assurance of more specific data upon the subject, I would be inclined to refer the matter back for further testimony, but apparently no account was kept, and nothing better than the general estimate of the claimants, testifying from memory, is available. The schedule covers approximately 100 pages of typewritten matter, and there is some testimony relating to what would be a reasonable charge for the services of a stenographer in doing the clerical work; but this estimate rests upon the unwarranted assumption that the work was done by what is ordinarily called a public stenographer, whose charges, it is well known, greatly exceed the prevailing compensation of salaried office stenographers. There is no evidence that the work was done in that way, and it is to be presumed that it was performed by the claimants' regularly employed stenographer. Assuming a reasonable compensation for a competent office stenographer to be $100 per month, an allowance of $35 would cover a period of practically 10 days, and I am satisfied that that amount of time is quite ample in which to do all the work preliminarily and finally required of a stenographer and typist in the preparation of the schedule. For the labor of gathering together and classifying the data I shall allow compensation as for the services of an accountant, at the rate of $15 per day for 10 days; and as a retainer, and for legal advice incidental to the supervision of the work, $100—making a total for the preparation of the schedule of $285. This amount may be somewhat larger than should have been authorized if the extent of the required service and the compensation to be allowed therefor had been prescribed in advance, but in view of all the circumstances, and taking into consideration the benefit to the estate of the service rendered, it is thought that the conclusion reached is not unreasonable and does substantial justice. It should be added that, in considering the compensation to be allowed for this service, as well as for other services to the bankrupt covered by the claim, I am not able to concur in the view, apparently entertained by the claimants, that there is any very material or direct relation between the mere aggregate of the assets and liabilities of a bankrupt estate, as shown by the schedules, and the compensation to be allowed to the bankrupt's attorneys.

206 F.—50

[8] ·The value of the matter involved is generally taken into consideration as an important factor in determining what is a reasonable charge for legal advice or professional service; but, so far as concerns service rendered to the bankrupt, neither the assets nor the liabilities of the estate represent or measure the value of the matter involved. Certain interests of the bankrupt and certain duties imposed upon him by the law constitute the subject-matter of the service. The degree of solvency of the estate may possibly be considered to the same extent as is the ability of a client to pay a reasonable fee, but here as yet it is wholly uncertain what dividend, if any, will be realized by the unsecured creditors; apparently, however, not a large one. The schedule itself is no criterion. Here for illustration the schedule discloses assets valued at $771,201.50, and liabilities aggregating $532,940; but within a few months after the filing of the schedule, upon an appraisement in the manner prescribed by law, the official appraisers reported the entire value of the assets as being only $217,996.63.

[9] There remains for consideration the claim of $1,850 for "attendance in bankruptcy court" at irregular intervals during the period from August, 1911, to November, 1912, 37 different days, at the rate of $50 per day. The magnitude of the item, if not startling, at least challenges our attention, and gives sharp emphasis to the inquiry whether it is contemplated by the bankruptcy act that estates shall be burdened with the expense of furnishing a legal attendant for the bankrupt while he is present pursuant to an order of the court at the first meeting of creditors, and sessions of the court, either to give information or to submit to examination under oath. While contingencies doubtless may arise where the assistance of counsel may be reasonably required, it is thought that there is no presumption of such need, and that ordinarily attorney's fees for such services are not chargeable against the estate. It is urged that in certain reported decisions (In re Michel [D. C.] 95 Fed. 803; In re Kross [D. C.] 96 Fed. 816; In re Mayer [D. C.] 101 Fed. 695; and In re Anderson [D. C.] 103 Fed. 855, being cited) the contrary view has been held; but upon analysis it will be found that no one of these cases lends strong support to the proposition that under all circumstances compensation for such a service is a matter of right. In the Michel Case, which was presented ex parte, no such charge was involved. In the Kross Case, Judge Brown, in rendering the decision, expressly states that:

"Ordinarily I cannot regard attendance by counsel for the bankrupt at all the various examinations as necessary. The restraints on discharge being confined to acts either criminal or most plainly fraudulent and wrong, the honest and straightforward debtor has rarely need of 'counsel,' unless falsely attacked, when professional aid may become proper and necessary, and should then be compensated. There is often, however, too much interference and objection by the bankrupt's attorney in the ordinary examinations in behalf of creditors, which operates in every way injuriously."

In the Mayer Case the question was not in issue, and was discussed only in arguendo. While in the Anderson Case it is not very clear just how the question arose, the conclusion of the court seems to have been that a bankrupt should be allowed such services of counsel "to the extent of protecting his rights on the inquiries" made of him. It may

be that it is not unusual for a small allowance to be made upon this account; but I have no present recollection that such a charge has ever before been called to my attention, and in the great majority of cases I can see no reason why the bankrupt should have the assistance of counsel in the performance of the simple duty required, or the burden of fees therefor imposed upon the estate. Quite obviously the purpose of requiring the attendance of the bankrupt is that he may give information, either voluntarily or under oath, touching any matter which may affect the administration and the settlement of the estate. He has no obligation except to disclose facts within his knowledge. He attends primarily as a witness, and there is ordinarily no more reason why he, as a witness, should have the protecting care of attendant counsel, than that any other witness under any other circumstances should have such protection. It is not perceived why, as is somewhere suggested, the bankrupt needs to be guarded against unwittingly or inadvertently doing or saying something which might be prejudicial to his right to a discharge in bankruptcy; if he is willing frankly to disclose the facts, he can, as a rule, suffer no prejudice. But here even that consideration is of little moment, for no one can be greatly concerned in the question whether or not a corporation shall be discharged, or in opposing such discharge. Nor could there here arise any question touching the matter of exemptions, for a corporation is not entitled to exemptions. Ordinarily, why should not the bankrupt put himself at the service of the trustee, who is presumably not antagonistic, and who should not, and presumably does not, have any motive or incentive to injure him or prejudice him in any of his rights? Instead of laying the facts before counsel especially employed by him, why should he not disclose them directly to the trustee or the attorney for the trustee?

If it were shown that the trustee and his attorney were disposed unjustly to attack him or to treat him unfairly, possibly he should have the assistance of counsel, but ordinarily it may be assumed that if any such disposition were shown the referee or judge would check it and see that his rights were protected while acting as a witness or informant, as the court will protect a witness against wrong or abuse in any other case or proceeding in which he appears in obedience to process. It is doubtless true that the claimants here spent at least a large part of the time in attending the bankruptcy proceedings for which they claim compensation, and lest injustice be done to them I have taken the trouble to go through the voluminous stenographic report of the proceedings had before the referee; but in the main it is not apparent how their attendance was either of benefit to the estate or was needed by the bankrupt. At one time criminal prosecutions were instituted against the officers of the bankrupt in attendance, and it may be that an allowance can with propriety be made for counsel in connection with that feature of the proceedings; but surely it was unnecessary to have counsel in attendance all the time in anticipation of such a need. The same contingency might arise any time in the course of the examination of a witness in court, and in a proper case the court would doubtless give the witness an opportunity to procure counsel.

It is, however, urged by claimants that their presence was in compliance with the express order and direction of the referee. It is true that in the order made by the referee (but apparently drafted by claimants) allowing the claim there is a recital to the effect that the attendance "was under the direction and order" of the referee; but I do not find that the record justifies such a finding. One of the claimants testified that the referee asked them to attend all the hearings; but if it were to be assumed that the referee has authority to require counsel for the bankrupt to be present, surely such direction, to be efficacious, should be made of record, and oral testimony thereof must be rejected as being incompetent. Upon examining what is furnished to me as the referee's docket, containing a large number of orders pertaining to the proceeding, I find no order or direction requiring counsel to be present. There is in the order of August 22, 1911, appointing the time for the first meeting of creditors, September 7, 1911, a requirement that the bankrupt and certain of its officers therein named be present at the first meeting of creditors, and also a direction that notice of the order be sent to the bankrupt and its officers and its attorneys of record, the claimants here. Upon the same day—that is, on August 22, 1911—a specific order was formulated and entered requiring the bankrupt and its officers to appear on September 7th, and this is expressly directed to the bankrupt and to P. H. Wall, its president, and N. K. Wall and B. F. O'Neil, its secretary and treasurer respectively; it makes no mention of the bankrupt's counsel. I find no other order bearing upon the subject.

With the one exception noted, I am unable to find from the whole record that there was any reasonable need for the attendance of the claimants at the meetings of creditors or the sessions of the court, as counsel for the bankrupt, and considering all services under this head, which were of benefit to the estate or which fall within the rule hereinbefore stated, it is thought that $100 is all that can properly be allowed upon this account. In that view it becomes unnecessary specifically to find upon the issue whether the attendance covered 37 days, as contended for by the claimants, or only 30 days, as asserted by the trustee. Nor need we determine what would be a reasonable per diem allowance for such attendance, taking into consideration the actual amount of time spent upon each of the several days and the character and scope of the business then under consideration. It is doubtless true, and it is much to be regretted, that the amount allowed is in any view inadequate reasonably to compensate for the time claimants have actually spent, but, as was said by Judge Phillips in Re Harrison Mercantile Company (D. C.) 95 Fed. 123:

"While the court personally would be pleased to exercise a spirit of large liberality both towards the attorneys and its officers assisting in the administration of bankrupt estates, it must be understood that the court is impressed with a sense of the obligation imposed upon it by the bankrupt act, to so administer it as to preserve both the letter and the spirit of the statute, and produce the best results in behalf of creditors."

That economy of administration is enjoined by the spirit of the act cannot be gainsaid. In re Curtis, 100 Fed. 792, 41 C. C. A. 59.

The order appealed from will therefore be reversed, with directions to allow claimants $385, the same to be paid in due course of administration, if there are sufficient funds available therefor; otherwise the claim is to share ratably with others of like dignity.