IN THE MATTER OF LEE LEONG, DOING BUSI-
NESS AS THE SHANGHAI DRY GOODS CO.,
BANKRUPT.

October 17, 1914.

1. *Bankruptcy—Attorney's fees:* Discussion of proper allowance to attorney for petitioning creditors, whose attendance in court at a place remote from his residence, involves protracted absence from his office.

2. *Same—Referee—Review of findings:* The rule of presumption in favor of a referee's finding does not apply where the finding is based on undisputed facts set out in the record.

*In Bankruptcy:*   On review of order of referee.

*J. W. Russell,* petitioning attorney, *pro se.*
*C. S. Carlsmith* for the trustee.

CLEMONS, J.   This matter is before the court on petition of the trustee for review of the referee's order awarding to the attorney for the petitioning creditors a fee of $750 for services to the estate, as follows:

1.   Preparing and filing petition for adjudication;

2.   Investigation of law as to questions suggested by fact that two of the respondent firm were minor children of the other member;

3.   Trip from Hilo to Honolulu involving attorney's absence of five full business days from office, for attendance upon hearing of petition;

4.   Attendance at hearing and services in securing amendment of petition to make parent sole respondent;

5.   Preparing and serving upon county sheriff, notice of adjudication and of stay of pending attachment;

6.   Advice and attention as to custody of property;

7.   Writing to bankrupt's attorney and finally threatening contempt proceedings, in endeavor to procure filing of schedules;

8.   Obtaining correct addresses of creditors for purpose of giving notice of first creditors' meeting; preparing and mailing notices to creditors, and preparing proof of notice;

9.  Attendance at first meeting of creditors, and one continuance thereof;

10.  Securing fire insurance on property in place of insurance cancelled by reason of attachment.

It will be noted that items 1 and 2 cover the same work, also items 3 and 4.  Item 10 represents services not specially mentioned in the referee's decision, but which indicate that counsel was not only diligent in the usual routine of the case, but looked after the interests of the creditors in a practical way worthy of high commendation.  Likewise, item 6 represents foresight and economy which secured such custody of the property as would be satisfactory to all concerned and save the extra expense of seizure by the marshal.

The fee of $750 does not cover transportation and hotel expenses of $126, a special bill for which was allowed by the referee without objection.

The estate, inventoried at $13,231.06, realized $6,481.04 from sales of merchandise and $192.11 from collections on book accounts of $573.59.  Proved claims aggregated $18,566.76.

Services to creditors prior to preparation of petition for adjudication, in the matter of a general assignment for benefit of creditors, and of a pending attachment by certain creditors, were not considered by the referee, and no contention is made here that they were entitled to any consideration.  See *In re Hart & Co.*, 3 U. S. Dist. Ct. Haw. 73; 16 Am. B. R. 275; *Randolph v. Scruggs*, 190 U. S. 533, 537-538.

The case was in no way difficult—it was only unusual. The property of the bankrupt was already secure under writ of attachment of the Territorial court.  And the question which arose from the fact that the bankrupt was doing business under a firm name with his two minor children as purported partners, could not possibly have given counsel any embarrassment; for in a petition against a firm an amendment may permit an adjudication against one of the

members alone: *In re Richardson*, 192 Fed. 50, 27 Am. B. R. 590 (Mass.); Collier, Bankruptcy, 10th ed., 416. As a matter of fact, in making the petition against the father and his infant children, counsel here had as a guide, and followed, the uniform precedents of *In re Duguid*, 100 Fed. 274, 3 Am. B. R. 794 (N. C.) and *In re Dunnigan*, 95 Fed. 428, 2 Am. B. R. 628 (Mass.). See Collier, Bankruptcy, 10th ed., 124-125, 154.

On the appearance day, the petition, as in the *Richardson* case, supra, was amended so as to make the parent, doing business under the alleged firm name, sole respondent; it having appeared upon examination of the bankrupt, that the minor children had no interest in the business and that he was sole proprietor. There was no difficulty in securing this amendment or the adjudication; the respondent made no answer to the petition, and on the appearance day freely admitted the fact of bankruptcy and all other facts alleged in the petition, except that of partnership,—the error as to which his frank statement permitted to be cured by amendment. But counsel, it seems, did not know whether the bankrupt would make opposition to the petition, and was prepared for any contest. It is probable that the matter of the hearing could have been attended to by associate counsel at Honolulu with entire safety; but under the special circumstances set forth in the application for an attorney's fee, the court has no criticism of counsel's course in himself coming to Honolulu for the hearing. These special circumstances were that he had engaged an associate at Honolulu to present the case for adjudication, and had given him careful instructions; but the Honolulu attorney had advised that in view of the importance of the case and senior counsel's familiarity with the facts and the law, it would be unwise for the latter not to be present, and the Honolulu attorney also, at the same time, informed senior counsel of his own inability to be present at the hearing in any event. The

eleventh hour at which this advice and information were given made it questionable whether it was not best for senior counsel to go to Honolulu, as he did.

[1] The important point of controversy here is, as to how much, if anything, may be allowed for absence involved in attendance at court at a distant point, whereby counsel is detained from his office at the risk of possible, or probable, loss of other business. In behalf of the objecting creditors, it is contended that in this case the attention required in court at Honolulu could have been given equally well by an attorney of that city, and that it is not fair to charge the estate for the four extra days' absence of an attorney who came from a remote city to attend the hearing,—that as well might a San Francisco attorney have been engaged at extra expense for the two weeks or more consumed in transportation between that city and Honolulu.

We have already indicated our approval of the Hilo attorney's coming to Honolulu to attend court under the circumstances. The matter of the general retainer of Hilo counsel rather than Honolulu counsel, which has been adverted to in argument, is also approved because of the desirability of having an attorney residing near the bankrupt's place of business. Item 10 alone is suggestive of the wisdom of such action.

Now, supposing there were allowed $50 for items 1 and 2; and $300 for items 3 and 4 (being, say, $100 for the day in court, only half an hour of which was used, and $50 a day for the four other days absent), and for item 5 which covers minor services ancillary to those under items 3 and 4; and $25 for item 6; $25 for items 7 and 8; $25 for item 9 (admitting the necessity of this service); and $75 for item 10 (which is all that could be given for even this valuable service), we would have an aggregate fee of $500, which, it will be remembered, is net above expenses involved in the five days' absence. It must not be understood, however, that this estimate is intended as fixing any

rigid scale of fees, especially as to attendance at Honolulu of attorneys from remote places in Hawaii. Rather, is the estimate made to demonstrate in a rough way the over-liberality of the fee of $750 allowed by the referee. In cases like this where a large part of the attorney's time is taken up by transportation, the court cannot take a highly optimistic, speculative, view of possible business lost through the attorney's absence from his office. Only moderate compensation is to be expected in such cases. See *In re Hart & Co.,* supra, involving a larger estate and more extensive and equally difficult services (save for the element of attendance at a distant point), for which a fee of only $100 was allowed; see also as to the policy of conservatism in the matter of fees, *In re Stratemeyer,* 2 U. S. Dist. Ct. Haw. 269, 271; *In re Talton,* 137 Fed. 178, 14 Am. B. R. 617; *In re Coldville Mfg. Co.,* 123 Fed. 579, 10 Am. B. R. 552, 556-557; *In re Carr,* 117 Fed. 572, 9 Am. B. R. 58, 59; *In re Mayer,* 101 Fed. 695, 4 Am. B. R. 238, 240.

In view of these considerations, no more liberal allowance can be made than that above supposed for the element of absence, and for the whole services it is the court's opinion that a fee of $500 is all that could reasonably be allowed. Let the referee's order be modified accordingly.

In so ruling there is no disposition to criticize a conscientious and efficient officer of this court. The real ground of our difference of opinion lies, we think, in the referee's having regarded the size of the estate as inventoried rather than the cash actually realized therefrom and, as already indicated, in his having allowed rather too much for the attorney's absence in attending court at Honolulu.

[2] Also, this decision recognizes the cited rule of presumption in favor of a referee's finding, but must hold that the rule does not apply where a finding is, as here, based on undisputed facts set out in the record. *In re Big Cahaba Coal Co.,* 183 Fed. 662;, 26 Am. B. R. 910, 912; *In re McCrary Bros.,* 169 Fed. 485, 22 Am. B. R. 161; *Ohio*

*Valley Bank v. Mack,* 163 Fed. 155, 20 Am. B. R. 919; *In re McDonald & Sons,* 178 Fed. 487, 24 Am. B. R. 446, affirmed 25 Am. B. R. 948.